# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROY WRENN and RAMEL GIBSON, individually and on behalf of all those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF NEW YORK, JASON ARBEENY, MICHAEL ARENELLA, MICHAEL BERGMAN, JERRY BOWENS, RICHARD DANESE, SASHA DIAZ, MICHAEL FODER, RICHARD HALL, SEAN JOHNSTONE, ADMIR KACAMAKOVIC, EDDIE MARTINS, OSCAR SANDINO, and HENRY TAVAREZ,<br><br>Defendants. | **Civil Action No.: _____**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Roy Wrenn ("Wren") and Ramel Gibson ("Gibson"), collectively ("Plaintiffs"), bring this class action complaint, individually and on behalf of a class of similarly situated persons, against defendant City of New York (the "City") and former New York City Police officers Jason Arbeeny, Michael Arenella, Michael Bergman, Jerry Bowens, Richard Danese, Sasha Diaz, Michael Foder, Richard Hall, Sean Johnstone, Admir Kacamakovic, Eddie Martins, Oscar Sandino, and Henry Tavarez (collectively, "Defendants"). Plaintiffs allege as follows upon information and belief, the investigation of counsel, and the personal knowledge of the named Plaintiffs:

## PRELIMINARY STATEMENT

1.    The New York City Police Department's ("NYPD") sordid history of abusive, racist, and unconstitutional practices toward vulnerable and marginalized New Yorkers under the Guiliani and Bloomberg administrations is well known to this Court.

2.    Equally well known to this Court is the sordid history of unconstitutional prosecutorial overreach and misconduct by the Kings County District Attorney's Office during the tenure of former District Attorney Charles J. Hynes ("Hynes").   *See e.g. Collins v City of New York*, 923 F. Supp. 2d 462 (E.D.N.Y. 2013).

3.    Plaintiffs Roy Wrenn and Ramel Gibson are but two of the untold victims of systemically unconstitutional practices by the NYPD and the Kings County District Attorney's Office in decades past.  Back in 2006, both Wrenn and Gibson were accosted, illegally detained, unconstitutionally subjected to degrading body cavity searches, and maliciously prosecuted by police officers and assistant district attorneys based on fabricated or unconstitutionally obtained evidence of drug possession.  Facing Rockefeller-era drug sentences in a system that invariably credited the accounts of officers over those of impoverished persons of color, Wrenn and Gibson had no choice but to plead guilty to various lesser crimes.

4.    For over 15 years, Plaintiffs labored under the weight of these unjust convictions and the stigma of their accompanying collateral consequences, including denial of housing, public benefits, employment opportunities, and family reunification.

5.    In 2022, however, an investigation by the Kings County District Attorney's Office – now led by a reform-minded District Attorney Eric Gonzalez ("Gonzalez") committed to righting the wrongs of his predecessor – uncovered a group of 13 NYPD officers who had committed serious misconduct relating directly to their job duties.  This cabal of officers consisted of

defendants Jason Arbeeny, Michael Arenella, Michael Bergman, Jerry Bowens, Richard Danese, Sasha Diaz, Michael Foder, Richard Hall, Sean Johnstone, Admir Kacamakovic, Eddie Martins, Oscar Sandino, and Henry Tavarez.

6.    As a result of this investigation, the People sought, and the New York State courts ultimately granted, writs of error coram nobis vacating judgments convicting a total of 378 persons of crimes based on the testimony of one or more of the disgraced officers.  According to the District Attorney's Office, this mass exoneration was the sixth largest in American history. Upon information and belief, however, none of the affected individuals were notified of the People's motion or offered an opportunity to participate in the exoneration proceeding.

7.    While the judgments against the 378 exonerated criminal defendants were vacated and the underlying accusatory instruments were dismissed, the writ of error coram nobis issued in each of the 378 cases explicitly refused to refund any fines, fees, assessments, restitution, or other assessments already paid by the exoneree in connection with the now-dismissed case.

8.    Among the 378 people exonerated by District Attorney Gonzalez's initiative were Plaintiffs Wrenn and Gibson, both of whom had been falsely arrested and maliciously prosecuted by defendant Jerry Bowens – a former police officer found to have supplied drugs to an informant in exchange for information and who later committed murder.

9.    Plaintiffs Wrenn and Gibson, acting on behalf of themselves and their exonerated brethren, now bring this class action to hold the individual officers identified above responsible for the illegal, malicious, and unconstitutional prosecutions endured by each class member. Moreover, given the City's well-documented deliberate indifference to and systematic encouragement of the unconstitutional patterns and practices that resulted in 378 New Yorkers being deprived of their Fourth Amendment rights, Plaintiffs seek to hold the City responsible for

the malicious prosecutions created and tolerated by its employees in the NYPD and the Kings County District Attorney's Office.  Finally, Plaintiffs also seek injunctive relief to reclaim the fines and fees wrongly retained following their exonerations, and to ensure that the defendant City does not institute future enforcement proceedings to collect any unpaid fines, fees, or assessments in connection with an exonerated case.

## NATURE OF THE ACTION

10.    Named Plaintiffs Roy Wrenn and Ramel Gibson, on behalf of themselves and a class of similarly situated individuals, as defined below, bring this action for compensatory damages, punitive damages, injunctive relief, and attorneys' fees pursuant to 42 U.S.C. §§ 1983 and 1988 and 28 U.S.C. §§ 2201 and 2202, for violations of Plaintiffs' civil rights under color of law, by defendants City of New York, Jason Arbeeny, Michael Arenella, Michael Bergman, Jerry Bowens, Richard Danese, Sasha Diaz, Michael Foder, Richard Hall, Sean Johnstone, Admir Kacamakovic, Eddie Martins, Oscar Sandino, and Henry Tavarez, as said rights are secured by said statutes and the Constitution of the United States.

## JURISDICTION & VENUE

11.    Jurisdiction is conferred upon this Court under 28 U.S.C. §§ 1331 and 1343, as this action seeks redress for the violation of plaintiffs' constitutional and civil rights.

12.    Plaintiffs' claims for injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202 and Fed. R. Civ. Pro. 57.

13.    Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391 (b)(2).

## PARTIES

14.    Plaintiff Roy Wrenn is a resident of the State of Florida.

15.    Plaintiff Ramel Gibson is a resident of the State of New York.

16.    Defendant City of New York is a municipal corporation, incorporated in the State of New York, residing in all five boroughs of New York City. At all relevant times, the City acted through its agency the NYPD, and the Kings County District Attorney's Office ("KCDAO") to commit the acts alleged in this Complaint and was responsible for such acts.

17.    Defendant Jason Arbeeny ("Arbeeny") is a former officer of the NYPD.

18.    Defendant Michael Arenella ("Arenella") is a former officer of the NYPD.

19.    Defendant Michael Bergman ("Bergman") is a former officer of the NYPD.

20.    Defendant Jerry Bowens ("Bowens") is a former officer of the NYPD.

21.    Defendant Richard Danese ("Danese") is a former officer of the NYPD.

22.    Defendant Sasha Diaz ("Diaz") is a former officer of the NYPD.

23.    Defendant Michael Foder ("Foder") is a former officer of the NYPD.

24.    Defendant Richard Hall ("Hall") is a former officer of the NYPD.

25.    Defendant Sean Johnstone ("Johnston") is a former officer of the NYPD.

26.    Defendant Admir Kacamakovic ("Kacamakovic") is a former officer of the NYPD.

27.    Defendant Eddie Martins ("Martins") is a former officer of the NYPD.

28.    Defendant Oscar Sandino ("Sandino") is a former officer of the NYPD.

29.    Defendant Henry Tavarez ("Tavarez") is a former officer of the NYPD.

30.    Defendants Arbeeny, Arenella, Bergman, Bowens, Danese, Diaz, Foder, Hall, Johnston, Kacamakovic, Martins, Sandino and Tavarez are collectively referred to herein as the "Individual Defendants."

## ALLEGATIONS OF FACT

### Allegations as to Plaintiff Ramel Gibson

31.     Plaintiff Ramel Gibson was arrested in September 2006 between 8:00 and 10:00pm in the lobby of a building within his apartment complex in south Brooklyn.

32.     At the time of his arrest, plaintiff Gibson was speaking with a friend when a black man with a hoody walked in brandishing a firearm.

33.     Plaintiff Gibson ran in fear of his life.  The man with the hoody started chasing Gibson.  The man never identified himself as a police officer before giving chase.

34.     While Gibson was running, someone identified themselves as police, and Mr. Gibson laid down on the ground.

35.     While he was laying on the ground, a police officer placed plaintiff Gibson in handcuffs.  As Gibson lay handcuffed on the ground, the officer hit plaintiff Gibson in the back of his head with a firearm.

36.     Thereafter, defendant officer Jerry Bowens unlawfully strip-searched Gibson, including an anal cavity search, and did not find any contraband.

37.     Gibson was placed under arrest anyway, without probable cause, and thrown into a police van.  Inside the van, defendant Bowens planted drugs in Gibson's vicinity, which Bowens then claimed to have found.

38.     Plaintiff Gibson was charged with a narcotics offense and spent approximately one week in custody awaiting the disposition of that charge, which was predicated upon the drugs planted by defendant Bowens. Plaintiff Gibson attempted to assert his right to testify and offer witnesses at the grand jury, and he gave the assistant District Attorney photographic evidence of the head wound inflicted by police during his arrest.  Confronted with this evidence of excessive

force and false arrest, the assistant District Attorney offered plaintiff Gibson a misdemeanor plea, which Plaintiffs allege was offered only to cover up the police misconduct in Gibson's case. Represented by an overworked and underpaid legal aid attorney, plaintiff Gibson was overwhelmed by the futility of his situation and the likelihood that he would be convicted based only on defendant Bowens' testimony, notwithstanding his attempts to offer evidence on his behalf. Plaintiff Gibson accordingly felt compelled to plead guilty in exchange for the certainty of a lesser sentence of time served, and he did just that.

39.    As a result of his coerced and baseless plea, plaintiff Gibson was evicted from his home and barred from his mother's home.

40.    Following his plea, the officers involved in plaintiff Gibson's false arrest and malicious prosecution accosted Gibson on the street in Brooklyn and made threatening comments, further evidencing their practice of retaliation and intimidation.

41.    In October 2022, following the revelations of misconduct regarding defendant Bowens and the other defendant officers, the People sought, and the court granted, a writ of error coram nobis vacating the judgment and dismissing the accusatory instrument against plaintiff Gibson.

42.    The writ of error coram nobis in plaintiff Gibson's case specially "ORDERED that [Gibson] is not entitled to a refund or any court fees, assessments, fines, restitution and or forfeiture [Gibson] may have paid."

**Allegations as to Plaintiff Roy Wrenn**

43.    In 2006, plaintiff Wrenn was standing in the hallway of an apartment building in south Brooklyn.

44.    While he was there, the police raided the building and twice frisked Wrenn without lawful basis.  Neither frisk revealed any contraband or other cause for further escalating the encounter.  Wrenn was handcuffed and illegally detained anyway.

45.    After being handcuffed, police illegally searched plaintiff Wrenn again.  And again, nothing was found.

46.    Defendant officer Jerry Bowens then took Wrenn into a stairwell.

47.    While still handcuffed, defendant Bowens pulled down Wrenn's pants and, without consent, performed an unlawful, degrading, and unconstitutional anal cavity search.  Bowens then claimed to have discovered drugs in Wrenn's anal cavity.

48.    Wrenn spent approximately one month on Rikers Island awaiting the disposition of a narcotics charge predicated on the degrading, unlawful, and unconstitutional anal cavity search conducted by defendant officer Bowens.  Overwhelmed by the futility of his situation, plaintiff Wrenn felt compelled to plead guilty in exchange for a favorable disposition.

49.    Plaintiff Wrenn lost his job as a result of defendant Bowens' malicious prosecution founded upon a degrading, unconstitutional body cavity search.

50.    In December 2022, following the revelations of misconduct regarding defendant Bowens and the other defendant officers, the People sought, and the court granted, a writ of error coram nobis vacating the judgment and dismissing the accusatory instrument against plaintiff Wrenn.

51.    The writ of error coram nobis in plaintiff Wrenn's case specially "ORDERED that [Wrenn] is not entitled to a refund or any court fees, assessments, fines, restitution and or forfeiture [Wrenn] may have paid."

**Allegations Common to All Plaintiffs**

52.     Upon information and belief, each of the 378 exonerated individuals was subject to criminal prosecution instituted without lawful probable cause and for malicious reasons by one or more of the defendant officers.

53.     The prosecution of each of the 378 exonerated individuals was terminated in their favor.

54.     Each of the 378 writs of error coram nobis included a line that specially "ORDERED that [the exonerated person] is not entitled to a refund or any court fees, assessments, fines, restitution and or forfeiture [that he or she] may have paid."

55.     On information and belief, none of the class plaintiffs, including the named Plaintiffs, were afforded any formal notice of the People's coram nobis application nor were offered any meaningful opportunity to participate in the coram nobis proceeding.

56.     Upon information and belief, former District Attorney Hynes and other policymakers or defendant City exhibited deliberate indifference to the constitutional deprivations caused by the defendant officers and assistants in the District Attorney's Office, including:

    a.      Pursuing and stopping individuals regardless of probable cause in order to inflate the officer's arrest statistics;

    b.      Pursuing and stopping innocent persons notwithstanding the existence of credible evidence which exonerates the accused of any criminal wrongdoing;

    c.      Fabricating evidence in order to cover up police misconduct, including excessive force;

    d.      Using excessive force, including negligent and reckless behavior while in pursuit;

    e.      Destruction of evidence in order to conceal police misconduct;

    f.      Falsely reporting and documenting searches and the results of searches;

    g.     Falsely testifying in court;

    h.     Failing to properly train police officers and assistance district attorneys; and

    i.      Planting evidence.

57.    Both the NYPD and the Kings County District Attorney's Office was aware of the foregoing conduct of the 13 defendant officers and assistants in the District Attorney's Office and did absolutely nothing to stop the conduct, reprimand the officers, or safeguard the rights of their arrestees notwithstanding the fact that at least 378 arrests were achieved due to a flagrant disregard of the class members' constitutional rights. Indeed, as demonstrated by multiple rulings in this Court and others, the Kings County District Attorney had a de facto policy of ignoring the constitutional rights of accused under former District Attorney Hynes.

58.    The conduct of Hynes persisted as he served as District Attorney for over two decades, from 1990 to 2013. The National Registry of Exonerations (a project of the Newkirk Center for Science & Society at University of California Irvine, the University of Michigan Law School and Michigan State University College of Law), lists numerous exonerations during the "Hynes Era," twenty-five of which prosecutorial conduct was deemed a primary or contributing factor. Several high-profile cases have been overturned because it has been demonstrated that Hynes' KCDAO was deliberately indifferent, a matter of de facto policy, to the constitutional rights of the accused. *See Collins v. City of New York*, 923 F. Supp. 2d 462 (E.D.N.Y. 2013), *see also Kellner v. City of New York*, No. 17-CV-1268, 2021 U.S. Dist. LEXIS 177698 (E.D.N.Y. 2021).

59.    This created an atmosphere which effectively encouraged constitutional deprivations by the NYPD (in the form of illegal searches, arrests, excessive force, false affidavits and malicious prosecutions), which the KCDAO assistants then ratified with the prosecutions.

60.     The combination of the NYPD over-aggressive policing, coupled with the KCDAO moving forward with the malicious prosecutions, created an environment where wrongful convictions were a more than highly infrequent occurrence.

61.     As a result of the actions of the NYPD and Hynes' KCDAO, on September 7, 2022, the current Kings County District Attorney Eric Gonzalez reversed these convictions in a ground breaking mass exonerations.  These exonerees now seek to form a class.

## CLASS ACTION ALLEGATIONS

62.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rule of Civil Procedure, individually and on behalf of a class consisting of:

> All persons whose judgment of conviction was vacated by writ of error coram nobis issued between September 2022 and December 2022 upon the People's motion by either the Supreme Court, Kings County or the Criminal Court of the City of New York, Kings County (the "Class").

63.     The foregoing Class consists of 377 persons: the two named Plaintiffs and 375 other persons.  One additional person (*see Barnes v. City of New York*, No. 23-cv-1070 (E.D.N.Y)) who would otherwise fall into the class has already filed and resolved an individual lawsuit on this ground, and he is therefore excluded from the proposed Class.

64.     The members of the Class are so numerous as to render joinder impracticable. Joinder is also impracticable because, upon information and belief, many Class members are not aware of the fact that their constitutional rights have been violated and that they have the right to seek judicial redress.  Many Class members lack sufficient means to retain an attorney to prosecute a civil rights lawsuit.  Moreover, as victims of unconstitutional policing and prosecution, many Class members do not bring individual claims for fear of retaliation and reprisal by NYPD officers. Class certification is the only appropriate avenue for the protection of Class members' rights.

65.    The Class members share a number of common questions of law and fact, including but not limited to:

a.    Whether the Individual Defendant officers engaged in a pattern and practice of unconstitutional stops and drug prosecutions without lawful probable cause;

b.    Whether the City defendant, through the leadership structure of the NYPD and the Kings County District Attorney's Office, failed to adequately train, screen, supervise, monitor, and discipline the Individual Defendant officers;

c.    Whether the City defendant, through the leadership structure of the NYPD and the Kings County District Attorney's Office, maintained a policy and practice of tolerating and encouraging unlawful prosecutions without lawful probable cause in order to inflate the officers' arrest statistics and corresponding career prospects;

d.    Whether the actions or inactions of the City defendant, through the leadership structure of the NYPD and the Kings County District Attorney's Office, encouraged perjury and evidence planting by the Individual Defendants and other police officers;

e.    Whether the actions or inactions of the City defendant, through the leadership structure of the NYPD and the Kings County District Attorney's Office, amount to deliberate indifference to the constitutional rights of the named Plaintiffs and Class members;

f.    Whether the actions or inactions of the City defendant, through the leadership structure of the NYPD and the Kings County District Attorney's Office, caused the constitutional violations inflicted by the Individual Defendants; and

g.    Whether the City defendant's retention of all fines, fees, and other assessments paid by the named Plaintiffs and Class members notwithstanding the vacatur of their underlying convictions constitutes a due process violation under the Fourteenth Amendment.

66.    In short, all Class members, including the named Plaintiffs, allege that they were victims of a pattern and practice set, tolerated, and enforced by the City defendant, through the leadership structure of the NYPD and the Kings County District Attorney's Office, to stop, seize, and maliciously prosecute vulnerable New Yorkers in marginalized communities in order to cover up police misconduct and bolster arrest statistics.  All Class members, including the named Plaintiffs, allege that they were deprived of due process by a writ of error coram nobis that simultaneously vacated their conviction while retaining certain fines, fees, and assessments that can be lawfully imposed only by a valid conviction.  Given that all claims in this case emanate from the single mass exoneration pioneered under the current District Attorney of Kings County, the common issues of law and fact predominate over any individual issues.

67.    The named Plaintiffs' claims are typical of those in the class.  Like all other class members, the named Plaintiffs were maliciously prosecuted by a cabal of disgraced officers whose actions were facilitated, caused, and enabled by the deliberate indifference and active encouragement of the defendant City.  Like all other class members, the named Plaintiffs were compelled to live under the weight of a tainted criminal conviction, along with all the collateral consequences attendant such a judgment, for over 15 years before the defendant officers' misconduct came to light and afforded Plaintiffs some measure of relief from the tainted criminal judgment.  And like all other class members, the named Plaintiffs were barred from recouping any funds that they may have paid as a consequence of a now-invalidated and vacated conviction.

68.     The legal theories under which the named Plaintiffs will seek injunctive and monetary relief are the same as those on which all members of the Class will rely.  Moreover, the harms suffered by the named Plaintiffs are typical of the harms suffered by all Class members.

69.     The named Plaintiffs have a strong personal interest in the outcome of this action, have no conflicts of interest with other members of the class, and will fairly and adequately protect the interests of the class.

70.     The named Plaintiffs are represented by Hach Rose Schirripa & Cheverie, LLP, a leading and experienced class action plaintiffs law firm.  Plaintiffs' additional attorney is an experienced and sophisticated practitioner.  Counsel for the Plaintiffs have the resources, expertise, and experience to prosecute this action.  Counsel for the Plaintiffs is aware of no conflicts among members of the Class or between the attorneys and members of the class.

71.     The Class should be certified pursuant to Federal Rule of Civil Procedure 23(a) and (b)(1)(B), (2), and (3) because all of the requisite requirements are satisfied, and because a class action is the clearly superior method of adjudicating the common claims against Defendants in the forum where the harm was inflicted – the Eastern District of New York.

## CAUSES OF ACTION

### COUNT 1: 42 U.S.C. § 1983 – against Individual Defendants

**Violation of the Fourth and Fourteenth Amendments by Malicious Prosecution**

72.     Each of the Individual Defendants, while acting as NYPD officers and under color of law, maliciously instituted one or more criminal prosecutions against Plaintiffs and other Class

members without lawful probable cause to believe that an actual crime had been committed by such plaintiff.[1]

73.     Each of the subject prosecutions was terminated in favor of the accused plaintiff.

74.     Plaintiffs, as well as each of the class plaintiffs, were held in custody for some period on account of the prosecutions instituted by the Individual Defendants.

75.     By virtue of the foregoing conduct, the Individual Defendant officers engaged in malicious prosecution of Plaintiffs and other Class members in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

76.     The Individual Defendants are accordingly liable for compensatory damages, punitive damages, and attorney's fees to Plaintiffs and other Class members under 42 U.S.C. §§ 1983 and 1988.

## COUNT 2: 42 U.S.C. § 1983 - against City Defendant

**Municipal *Monell* Liability for Individual Defendants' Constitutional Violations**

77.     The Individual Defendants, collectively and individually, while acting under color of law and in the employ and agent of the defendant City, engaged in unconstitutional conduct (as fully described above) pursuant to a custom, usage, practice, procedure or rule of the defendant City.

78.     The aforementioned unconstitutional customs, policies, usages, practices, procedures, and rules of the defendant City include, but are not limited to, the following:

---

[1] Apart from the named Plaintiffs, whose prosecutions were instituted by defendant Bowens, it is unknown at this time which defendant officer instigated the prosecution of which class plaintiff. Nevertheless, upon information and belief, each of the class plaintiffs was maliciously prosecuted by at least one of the defendant officers, and each of the defendant officers maliciously instituted the prosecution of at least one class plaintiff. With proper permission, Plaintiffs will amend their complaint to reflect the specific plaintiff-officer match upon review of discovery.

a.      Pursuing and stopping individuals regardless of probable cause in order to inflate the officer's arrest statistics;

b.      Pursuing and stopping innocent persons notwithstanding the existence of credible evidence which exonerates the accused of any criminal wrongdoing;

c.      Fabricating evidence in order to cover up police misconduct, including excessive force;

d.      Using excessive force, including negligent and reckless behavior while in pursuit;

e.      Destruction of evidence in order to conceal police misconduct;

f.      Falsely reporting and documenting searches and the results of searches;

g.      Falsely testifying in court;

h.      Failing to properly train police officers and assistance district attorneys; and

i.      Planting evidence.

79.     The foregoing customs, policies, usages, practices, procedures and rules of the defendant City and its agencies and agents constituted deliberate indifference to the safety, well-being and constitutional rights of Plaintiffs and the Class.

80.     The foregoing customs, policies, usages, practices, procedures and rules of the defendant City were the direct and proximate cause of the constitutional violations suffered by Plaintiffs and the Class as alleged herein.

81.     The foregoing customs, policies, usages, practices, procedures and rules of the defendant City were the moving force behind the constitutional violations suffered by Plaintiffs and the Class as alleged herein.

82.     The supervisory and policymaking agents and officers of the defendant City, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by subordinate police officers and assistant district attorneys, including the Individual Defendants, and were thus directly responsible for the violation of the Plaintiffs' and the Class members' constitutional rights.

83.     The acts complained of deprived Plaintiffs and other Class members of their rights under the Fourth and Fourteenth Amendments to the United States Constitution.

### COUNT 3: 42 U.S.C. § 1983 - against City Defendant

**Due Process Violation for Retaining Fines, Fees, and Other Assessments Associated with Now-Vacated Convictions**

84.     Despite vacating the criminal judgments and dismissing the accusatory instruments against the named Plaintiffs and the other 376 subject exonerees, the writs of error coram nobis specifically disallowed any refund of any fines, fees, assessments, surcharges, restitution, or other funds that the now-exonerated plaintiffs had paid.

85.     Plaintiffs and other Class members have a property interest in recouping any fines, fees, or other assessments paid as a result of a subsequently vacated conviction.

86.     The defendant City's retention of these monies in the absence a valid judgment of conviction constitutes the impermissible denial of Plaintiffs and other Class members' property rights without any process, much less due process, in violation of the Fourteenth Amendment to the Constitution of the United States.

87.     Given their lack of notice about the pending coram nobis proceedings, Plaintiffs and other Class members had no practical opportunity to object to the funds-retention provision of the coram nobis order.

88. Inasmuch as Plaintiffs and other Class members have no right to appeal from a coram nobis order under these circumstances (*see People v Lovett*, 25 NY3d 1088, 1090 [2015], citing *People v Pagan*, 19 NY3d 368, 370 [2012] & *People v Bautista*, 7 NY3d 838 [2006]), Plaintiffs and other Class members have no meaningful avenue to challenge the City's unlawful and unconstitutional retention of their funds as a matter of state law.

89. Even if one or more Class members did not pay any fine, fee, surcharge, restitution, or other assessment prior to the vacatur of his or her judgment of conviction, the funds-retention provision of the coram nobis order subjects them to future enforcement proceedings by the defendant City to recover such unpaid funds.

90. In light of the foregoing, Plaintiffs and the Class are entitled to an injunction commanding the return of any fees, funds, restitutions, fines, assessments, surcharges, or other monies paid in connection with any judgment vacated by writ of error coram nobis, and to a further injunction enjoining the commencement of any enforcement proceeding to collect any such monies not yet paid in connection with any judgement vacated by writ of error coram nobis.

## <u>CONCLUSION</u>

**WHEREFORE**, Plaintiffs respectfully request judgment against Defendants as follows:

A. Determining that this action is a proper class action, and designating Plaintiffs as class representatives of the Class;

B. Awarding compensatory and punitive damages in favor of Plaintiffs and the other Class members against Defendants for all damages sustained as a result of Defendants' wrongdoing, in an amount to be determined at trial, including pre- and post-judgment interest thereon;

C.      An injunction commanding the return of any fees, funds, restitutions, fines, assessments, surcharges, or other monies paid in connection with any judgment vacated by writ of error coram nobis, and further enjoining the commencement of any enforcement proceeding to collect any such monies not yet paid in connection with any judgement vacated by writ of error coram nobis;

D.      Awarding Plaintiffs and the other Class members reasonable attorneys' fees and costs under 42 U.S.C. § 1988; and

E.      Such other and further relief as the Court may deem just and proper, together with, interest, costs and disbursements.

## JURY DEMAND

Plaintiffs hereby demands a trial by jury on all of the triable issues of fact and damages stated herein.

Dated:  December 5, 2023                    Respectfully submitted,
    New York, New York

                */s/ Frank Schirripa*
                Frank R. Schirripa, Esq.
                Kathryn A. Hettler , Esq.
                HACH ROSE SCHIRRIPA & CHEVERIE LLP
                112 Madison Avenue, 10th Floor
                New York, New York 10016
                Telephone: (212) 213-8311
                Facsimile: (212) 779-0028
                fschirripa@hrsclaw.com
                kh@hrsclaw.com

                Winston R. Brownlow, Esq.
                **Brownlow Law, P.C.**
                510 Clinton Square
                Rochester, NY 14604
                brownlowlawpc@gmail.com

                *Attorneys for Plaintiffs*