**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------------

RAMEL GIBSON, individually and on
behalf of all those similarly situated,

             Plaintiff,

      v.

CITY OF NEW YORK, MICHAEL
ARENELLA, MICHAEL BERGMAN,
JERRY BOWENS, RICHARD DANESE,
MICHAEL FODER, RICHARD HALL,
SEAN JOHNSTONE, ADMIR
KACAMAKOVIC, EDDIE MARTINS,
OSCAR SANDINO, and HENRY
TAVAREZ.

             Defendants.

--------------------------------------------------------------

**Civil Action No. 1:23-cv-08968**

**SECOND AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

       Plaintiff Ramel Gibson ("Plaintiff"), brings this second amended class action complaint, individually and on behalf of a class of similarly situated persons, against Defendants City of New York (the "City") and former New York City Police officers Michael Arenella, Michael Bergmann, Jerry Bowens, Richard Danese, Michael Foder, Richard Hall, Sean Johnstone, Admir Kacamakovic, Eddie Martins, Oscar Sandino, and Henry Tavarez (together with the City, "Defendants"). Plaintiff alleges as follows upon information and belief, the investigation of counsel, and the personal knowledge of the named Plaintiff:

## PRELIMINARY STATEMENT

1.      The New York City Police Department's ("NYPD") sordid history of abusive, racist, and unconstitutional practices toward vulnerable and marginalized New Yorkers under the Giuliani and Bloomberg administrations is well known to this Court. Equally well known to this Court is the sordid history of unconstitutional prosecutorial overreach and misconduct by the Kings County District Attorney's Office during the tenure of former District Attorney Charles J. Hynes ("Hynes"). *See e.g. Collins v City of New York*, 923 F. Supp. 2d 462 (E.D.N.Y. 2013).

2.      One such unconstitutional practice employed by the NYPD is stop-and-frisk, a police practice under which officers stop and search citizens without the reasonable suspicion required for these interventions. Concerns about the practice first arose under former New York City mayor Rudy Giuliani; however, the dramatic increase in stop-and-frisk became the signature public safety initiative during the twelve years that Michael Bloomberg was the mayor of New York City (2002 – 2013).

3.      In 2001, the New York City Council enacted legislation requiring the NYPD to report to the Council detailed information about stops of pedestrians, including information about their race. It finally did so in February 2007, at which time it was disclosed that stops had grown from about 97,000 in 2002 to more than 500,000 in 2006. The 2006 data shows that Blacks and Latinos comprised more than 80% of those searched.

4.      Finally, in August 2013, in a landmark decision, a federal court found the NYPD's highly controversial stop-and-frisk practices to be unconstitutional. Specifically, the court found that the practices violated New Yorkers' Fourth Amendment rights to be free from unreasonable searches and seizures and that they were racially discriminatory in violation of the Equal Protection

Clause of the Fourteenth Amendment. *See Floyd v. City of New York*, 959 F. Supp. 2d 540 (S.D.N.Y. 2013).

5.      Notably, the court also found that having received both actual and constructive notice of the widespread Fourth Amendment violations since at least 1999, the City "acted with deliberate indifference towards the NYPD's practice of making unconstitutional stops and conducting unconstitutional frisks," and that "[e]ven if the City had not been deliberately indifferent, the NYPD's unconstitutional practices were sufficiently widespread as to have the force of law." *Id.*

6.      Back in 2006, when the practice of stop-and-frisk was at its height, Plaintiff Gibson was stopped without a legal basis, accosted, illegally detained, unconstitutionally subjected to degrading body cavity searches, and maliciously prosecuted by police officers and assistant district attorneys based on fabricated or unconstitutionally obtained evidence of drug possession.

7.      Facing Rockefeller-era drug sentences in a system that invariably credited the accounts of officers over those of impoverished persons of color, Plaintiff Gibson, African-American, had no choice but to plead guilty to various lesser crimes.

8.      For over 15 years, Plaintiff labored under the weight of this unjust conviction and the stigma of its accompanying collateral consequences, including denial of housing, public benefits, employment opportunities, and family reunification.

9.      In 2022, however, an investigation by the Kings County District Attorney's Office ("KCDAO") – now led by a reform-minded District Attorney Eric Gonzalez ("Gonzalez") committed to righting the wrongs of his predecessor – uncovered a group of 13 NYPD officers who had committed serious misconduct relating directly to their job duties. This cabal of officers consisted of Defendants Michael Arenella, Michael Bergmann, Jerry Bowens, Richard Danese,

Michael Foder, Richard Hall, Sean Johnstone, Admir Kacamakovic, Eddie Martins, Oscar Sandino, Henry Tavarez and relevant non-parties Jason Arbeeny and Sasha Diaz.

10.      As a result of this investigation, the New York State courts ultimately granted writs of error coram nobis vacating judgments convicting a total of 378 persons of crimes based on the testimony of one or more of the disgraced officers. According to the KCDAO, this mass exoneration was the sixth largest in American history.

11.      In announcing the dismissal of the 378 convictions, District Attorney Gonzalez stated that "[t]hese former police officers were found to have committed serious misconduct that directly relates to their official job duties, calling into question the integrity of every arrest they have made."[1] He added that "[a] thorough review by my Conviction Review Unit identified those cases in which *their testimony was essential to proving guilt*, and I will now move to dismiss those convictions as I no longer have confidence in the integrity of the evidence that underpinned them."[2]

12.      The KCDAO's Press Release revealed that the Conviction Review Unit reviewed all Brooklyn convictions in which these 13 ex-officers were involved and stressed that "only cases where they acted as *primary witnesses, and there was no other independent evidence to support a conviction,* were flagged for dismissal."[3]

13.      Among the 378 people exonerated by District Attorney Gonzalez's initiative was Plaintiff Gibson, who had been falsely arrested and maliciously prosecuted by Defendant Jerry

---

[1] Press Release, King's County District Attorneys' Office, Brooklyn DA Eric Gonzalez to Dismiss 378 Convictions That Relied on 13 Officers Who Were Later Convicted of Misconduct While on Duty, Sep. 7, 2022, available at http://www.brooklynda.org/2022/09/07/brooklyn-da-eric-gonzalez-to-dismiss-378-convictions-that-relied-on-13-officers-who-were-later-convicted-of-misconduct-while-on-duty/. (Attached hereto as **Exhibit A**).

[2] *Id.*

[3] *Id.*

Bowens – a former police officer found to have supplied drugs to an informant in exchange for information and who later committed murder.

14.     Plaintiff Gibson, acting on behalf of himself and their exonerated brethren, now brings this class action to hold the individual officers identified above responsible for the illegal, malicious, and unconstitutional prosecutions endured by each class member. Moreover, given the City's well-documented deliberate indifference to and systematic encouragement of the unconstitutional patterns and practices that resulted in 378 New Yorkers being deprived of their Fourth Amendment rights, Plaintiff seeks to hold the City responsible for the malicious prosecutions created and tolerated by its employees in the NYPD and the KCDAO.

## NATURE OF THE ACTION

15.     Named Plaintiff Ramel Gibson, on behalf of himself and a class of similarly situated individuals, as defined below, brings this action for compensatory damages, punitive damages, and attorneys' fees pursuant to 42 U.S.C. §§ 1983 for violations of plaintiffs' civil rights under color of law, by Defendants City of New York, Michael Arenella, Michael Bergmann, Jerry Bowens, Richard Danese, Michael Foder, Richard Hall, Sean Johnstone, Admir Kacamakovic, Eddie Martins, Oscar Sandino, and Henry Tavarez, as said rights are secured by said statutes and the Constitution of the United States.

## JURISDICTION AND VENUE

16.     Jurisdiction is conferred upon this Court under 28 U.S.C. §§ 1331 and 1343, as this action seeks redress for the violation of plaintiffs' constitutional and civil rights.

17.     Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391 (b)(2) because a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district.

## PARTIES

*Plaintiff*

18.    Plaintiff Ramel Gibson is an African-American male and a resident of the State of New York.

*Defendants*

19.    Defendant City of New York is a municipal corporation, incorporated in the State of New York, residing in all five boroughs of New York City. At all relevant times, the City acted through its agency the NYPD and the KCDAO to commit the acts alleged in this Complaint and was responsible for such acts.

20.    Defendant Michael Arenella ("Arenella") is a former NYPD officer who was found guilty of committing crimes while on duty. Three (3) convictions that were directly based on Arenella's work as an officer have been dismissed because Arenella served as an essential witness in each of these cases such that the cases could not have been prosecuted without him. Hence, Arenella participated in the malicious prosecution of three members of the purported Class.

21.    Defendant Michael Bergmann ("Bergmann") is a former NYPD officer who was found guilty of committing crimes while on duty. One (1) conviction that was directly based on Bergmann's work as an officer has been dismissed because Bergmann served as an essential witness in this case such that the case could not have been prosecuted without him. Hence, Bergmann participated in the malicious prosecution of one member of the purported Class.

22.    Defendant Jerry Bowens ("Bowens") is a former NYPD officer who was found guilty of committing crimes while on duty. One hundred thirty-four (134) convictions that were directly based on Bowens' work as an officer have been dismissed because Bowens served as an essential witness in each of these cases such that the cases could not have been prosecuted without

him. Hence, Bowens participated in the malicious prosecution of one hundred thirty-four members of the purported Class.

23.    Defendant Richard Danese ("Danese") is a former NYPD officer who was found guilty of committing crimes while on duty. Four (4) convictions that were directly based on Danese's work as an officer have been dismissed because Danese served as an essential witness in each of these cases such that the cases could not have been prosecuted without him. Hence, Danese participated in the malicious prosecution of four members of the purported Class.

24.    Defendant Michael Foder ("Foder") is a former NYPD officer who was found guilty of committing crimes while on duty. Twenty-seven (27) convictions that were directly based on Foder's work as an officer have been dismissed because Foder served as an essential witness in each of these cases such that the cases could not have been prosecuted without him. Hence, Foder participated in the malicious prosecution of twenty-seven members of the purported Class.

25.    Defendant Richard Hall ("Hall") is a former NYPD officer who was found guilty of committing crimes while on duty. Eighteen convictions that were directly based on Hall's work as an officer have been dismissed because Hall served as an essential witness in each of these cases such that the cases could not have been prosecuted without him. Hence, Hall participated in the malicious prosecution of eighteen members of the purported Class.

26.    Defendant Sean Johnstone ("Johnstone") is a former NYPD officer who was found guilty of committing crimes while on duty. Forty convictions that were directly based on Johnstone's work as an officer have been dismissed because Johnstone served as an essential witness in each of these cases such that the cases could not have been prosecuted without him. Hence, Johnstone participated in the malicious prosecution of forty members of the purported Class.

27.     Defendant Admir Kacamakovic ("Kacamakovic") is a former NYPD officer who was found guilty of committing crimes while on duty. Fourteen (14) convictions that were directly based on Kacamakovic's work as an officer have been dismissed because Kacamakovic served as an essential witness in each of these cases such that the cases could not have been prosecuted without him. Hence, Kacamakovic participated in the malicious prosecution of fourteen members of the purported Class.

28.     Defendant Eddie Martins ("Martins") is a former NYPD officer who was found guilty of committing crimes while on duty. Sixty (60) convictions that were directly based on Martins' work as an officer have been dismissed because Martins served as an essential witness in each of these cases such that the cases could not have been prosecuted without him. Hence, Martins participated in the malicious prosecution of sixty members of the purported Class.

29.     Defendant Oscar Sandino ("Sandino") is a former NYPD officer who was found guilty of committing crimes while on duty. Forty-three (43) convictions that were directly based on Sandino's work as an officer have been dismissed because Sandino served as an essential witness in each of these cases such that the cases could not have been prosecuted without him. Hence, participated in the malicious prosecution of forty-three members of the purported Class.

30.     Defendant Henry Tavarez ("Tavarez") is a former NYPD officer who was found guilty of committing crimes while on duty. Five (5) convictions that were directly based on Sandino's work as an officer have been dismissed because Sandino served as an essential witness in each of these cases such that the cases could not have been prosecuted without him. Hence, participated in the malicious prosecution of five members of the purported Class.

31.    Defendants Arenella, Bergmann, Bowens, Danese, Foder, Hall, Johnston, Kacamakovic, Martins, Sandino and Tavarez are collectively referred to herein as the "Individual Defendants."

***Relevant Non-Parties***

32.    Jason Arbeeny ("Arbeeny"), deceased, is a former NYPD officer who was found guilty of committing crimes while on duty. Fourteen (14) convictions that were directly based on Arbeeny's work as an officer have been dismissed because Arbeeny served as an essential witness in each of these cases such that the cases could not have been prosecuted without him. Hence, participated in the malicious prosecution of fourteen members of the purported Class.

33.    Sasha Diaz ("Diaz") is a former NYPD Officer who was found guilty of committing crimes while on duty. Fifteen (15) convictions that were directly based on Diaz's work as an officer have been dismissed because Diaz served as an essential witness in each of these cases such that the cases could not have been prosecuted without her. Hence, Diaz participated in the malicious prosecution of fifteen members of the purported Class.

## ALLEGATIONS OF FACT

***Allegations as to Plaintiff Ramel Gibson***

34.    Plaintiff Ramel Gibson was arrested in September 2006 between 8:00 and 10:00pm in the lobby of a building within his apartment complex in south Brooklyn.

35.    At the time of his arrest, Plaintiff Gibson was speaking with a friend when a Black man with a hooded sweatshirt walked in brandishing a firearm.

36.    Plaintiff Gibson ran towards his apartment in fear of his life. Another man who was accompanying the Black man in the hooded sweatshirt started chasing Gibson. The man never identified himself as a police officer before giving chase.

37.    While Gibson was running, someone identified themselves as police, and Plaintiff laid down on the ground in the back stairwell of his apartment building.

38.    While he was laying on the ground, the police officer placed Gibson in handcuffs. As Plaintiff Gibson lay handcuffed on the ground, the officer then hit him in the back of his head with a firearm.

39.    The officer asked Plaintiff Gibson where the drugs were and why he ran. In response, Plaintiff Gibson informed the officer that he did not know that they were police.

40.    Subsequently, the Black man in the hooded sweatshirt, who was later identified as Defendant Bowens, unlawfully strip-searched Gibson in the stairwell, including an anal cavity search, but did not find any contraband.

41.    Gibson was placed under arrest anyway, without probable cause, and was thrown into a police van and taken to the precinct. After Plaintiff Gibson was escorted out of the van, Defendant Bowens conducted a search of the van, and while Plaintiff Gibson's back was turned, Defendant Bowens said that he found drugs scattered in the back of the van when he opened it. Upon information and belief, Defendant Bowens planted drugs in the van, which he then claimed to have found.

42.    Plaintiff Gibson was charged with a narcotics offense and spent approximately one week in custody awaiting the disposition of that charge, which was predicated upon the drugs planted by Defendant Bowens. Plaintiff Gibson attempted to assert his right to testify and offer witnesses at the grand jury, and he gave the assistant District Attorney photographic evidence of the head wound inflicted by police during his arrest.

43.    Confronted with this evidence of excessive force and false arrest, the assistant District Attorney offered Plaintiff Gibson a misdemeanor plea, which Plaintiff Gibson alleges was

10

offered only to cover up the police misconduct in Gibson's case. Represented by an overworked and underpaid legal aid attorney, Plaintiff Gibson was overwhelmed by the futility of his situation and the likelihood that he would be convicted based only on Defendant Bowens' testimony, notwithstanding his attempts to offer evidence on his behalf. Plaintiff Gibson accordingly felt compelled to plead guilty in exchange for the certainty of a lesser sentence of time served, and he did just that.

44.    Upon information and belief, Defendant Bowens played an active role in the prosecution of Gibson. Defendant Bowens was not only responsible for performing an illegal cavity search on Gibson and planting evidence, but upon information and belief, he was also responsible for and filing a false police report in connection with Gibson's arrest, misrepresenting evidence to prosecutors, and/or failing to provide prosecutors with material evidence or information.

45.    In fact, District Attorney Gonzalez later acknowledged that Defendant Bowens served as an "essential witnesses" in Plaintiff Gibson' case, meaning that the case "could not have been prosecuted without [him]" and that Bowens' testimony was "essential to proving [Gibson's] guilt."

46.    Upon information and belief, the prosecutors were aware of and/or had reason to be aware of Bowens' misconduct.  As set forth below, at the time of Gibson's arrest, the NYPD had a widespread practice of fabricating drug charges against innocent people in order to meet arrest quotas. Yet, the prosecutors purposefully and willfully ignored such transgressions in order to get more convictions.

47.    As a result of his coerced and baseless plea, Plaintiff Gibson was evicted from his home and barred from his mother's home.

48.     Following his plea, the officers involved in Plaintiff Gibson's false arrest and malicious prosecution accosted Gibson on the street in Brooklyn and made threatening comments, further evidencing their practice of retaliation and intimidation.

49.     In October 2022, following the revelations of misconduct regarding Defendant Bowens and the other officers, the court granted a writ of error coram nobis vacating the judgment and dismissing the accusatory instrument against Plaintiff Gibson.

50.     By virtue of the foregoing conduct, the NYPD officers, specifically Defendant Bowens, engaged in malicious prosecution of Plaintiff Gibson in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

***Allegations Common to All Plaintiffs***

51.     As set forth above, in September 2022, the KCDAO announced the dismissal of 378 convictions that relied on thirteen officers who were later convicted of misconduct while on duty.[4]

52.     These thirteen ex-NYPD officers who provided testimonies as key witnesses in Plaintiff and the class members cases were found guilty of crimes, including planting drugs and lying under oath.

53.     Upon information and belief, each of the 378 exonerated individuals was subject to criminal prosecution instituted without lawful probable cause and for malicious reasons by one or more of the Defendant officers.

---

[4] *See* Sep. 7, 2022 KCDAO Press Release, Exhibit A.

54.     In fact, District Attorney Gonzalez acknowledged that these thirteen officers served as "essential witnesses" in the 378 cases, meaning that these cases "could not have been prosecuted without them."[5]

55.     The prosecution of each of the 378 exonerated individuals was terminated in their favor.

56.     Upon information and belief, former District Attorney Hynes and other policymakers or Defendant City exhibited deliberate indifference to the constitutional deprivations caused by the Defendant officers and assistants in the District Attorney's Office, including:

a.     Pursuing and stopping individuals regardless of probable cause in order to inflate the officer's arrest statistics;

b.     Pursuing and stopping innocent persons notwithstanding the existence of credible evidence which exonerates the accused of any criminal wrongdoing;

c.     Fabricating evidence in order to cover up police misconduct, including excessive force;

d.     Using excessive force, including negligent and reckless behavior while in pursuit;

e.     Destruction of evidence in order to conceal police misconduct;

f.     Falsely reporting and documenting searches and the results of searches;

g.     Falsely testifying in court;

h.     Failing to properly train police officers and assistance district attorneys; and

i.     Planting evidence.

---

[5] *Id.*

57.     One of the thirteen officers responsible for 14 of the 378 exonerations is relevant non-party Jason Arbeeny, who was convicted in 2011 for planting drugs on innocent people in 2007.

58.     News articles detailing Arbeeny's criminal trial revealed that NYPD officers made false arrests to meet quotas and rake in overtime – which was commonplace within the department.[6]

59.     In fact, Stephen Anderson ("Anderson"), a former NYPD narcotics detective testified during Arbeeny's trial that it was a common practice to fabricate drug charges against innocent people to make arrest quotas, commenting "[a]s a detective you still have a number to reach while you are in the narcotics division." *See* Exhibit C.

60.     When asked by the late Justice Gustin Reichbach, the federal judge who presided over Arbeeny's trial, whether Anderson observed the practice of laying drugs on innocent people with some frequency, Anderson responded "[y]es, multiple times." *Id.* Anderson further commented, "[i]t was something I was seeing a lot of, whether it was from supervisors or undercovers or even investigators…[s]eeing it so much, it's almost like you have no emotion with it."[7]

61.     Notably, Anderson was testifying under a cooperation agreement with prosecutors, having been arrested for planting cocaine on innocent people in 2008 to help out fellow cop, Defendant Tavarez, whose arrest statistics had been low. *See* Exhibit C. A federal judge presiding

---

[6] *See* Oren Yaniv, *Ex-Cop Jason Arbeeny cries for judge, gets probation; Judge Gustin Reichbach could have given him four years*, NEW YORK DAILY NEWS, (updated Jan. 10, 2019), attached hereto as **Exhibit B**; *see also* J. Marzulli, *We fabricated drug charges against innocent people to meet arrest quotas, former detective testifies*, NEW YORK DAILY NEWS, (updated Jan. 10, 2019), attached hereto as **Exhibit C.**

[7] *See* Jim Dwyer, *The Drugs? They Came From the Police*, N.Y. TIMES (Oct. 13, 2011), attached hereto as **Exhibit D.**

over a separate civil suit against Anderson and Tavarez even commented on the prevalence of this practice, stating the NYPD is plagued by "widespread falsification" by arresting officers. *See id.*

62.     During Arbeeny's trial, Justice Reichbach commented "I thought I was not naïve…[b]ut even this court was shocked, not only be the seeming pervasive scope of misconduct but even more distressingly by the seemingly casualness by which such conduct is employed."[8]

63.     Arbeeny's criminal defense attorney also blamed Arbeeny's misconduct on the "enormous pressure" Arbeeny was under to meet these quotas. *See* Exhibit B.

64.     Upon information and belief, the prosecutors were aware of and/or had reason to be aware of the officers' transgressions, but purposefully and willfully ignored any such transgressions in order to get more convictions.

65.     Indeed, the pressure put on the NYPD officers to meet the arrest quotas was so widespread, that in August 2010, then-Governor David Paterson signed legislation expanding protections for police officers under the state's anti-quota statute to ban retaliation against officers for not meeting quotas for tickets, summonses, arrests, and stop-and-frisk encounters. Previously the quota law only covered traffic violations.

66.     The Court in *Floyd* found that prior to the enactment of the 2010 quota law, the "NYPD had no written policy prohibiting quotas for stops, arrests, or other enforcement activities," and that there was "abundant evidence during this period of supervisors directing officers to meet numerical enforcement goals, as well as threatening the officers with negative consequences if they did not achieve those goals." *Floyd v. City of New York*, 959 F. Supp. 2d 540 (S.D.N.Y. 2013).

---

[8] *See* Tim Stelloh, *Detective Is Found Guilty of Planting Drugs*, N.Y. TIMES (Nov. 1, 2011), attached hereto as **Exhibit E.**

67.     Despite the 2010 legislation, a 2016 news article revealed allegations by NYPD officers that the NYPD was continuing to pursue illegal quotas and punishing officers who do not meet numerical goals.[9]  Subsequent reports revealed that these arrest quotas targeted minorities – specifically, members of the Black and Hispanic Communities, such as Plaintiff.

68.     The practice of planting of evidence on a person to meet an arrest quota is nothing new to the NYPD. In fact, the practice had become so prevalent that the NYPD developed a slang word for it – "flaking." According to the NYPD slang dictionary that was compiled by the Knapp Commission, a five-member panel formed in May 1970 by former NYC mayor John Lindsay to investigate corruption and misconduct within the NYPD, the word "flake" means "the planning of evidence on a person who is arrested, either to meet an arrest quota or to give leverage to shake down the arrested person."[10]

69.     Furthermore, the NYPD received both actual and constructive notice of the illegal quota policy, but did absolutely nothing to stop the conduct, reprimand the officers, or safeguard the rights of their arrestees notwithstanding the fact that at least 378 arrests were achieved due to a flagrant disregard of the class members' constitutional rights.

70.     On or about 2005, the Patrolmen's Benevolent Association of the City of New York ("PBA") filed a grievance under its collective bargaining agreement asserting that the  quota policy violated New York Labor Laws. *See Whitehead v. City of New York*, 953 F. Supp. 2d 367, 370–71 (E.D.N.Y. 2012). The arbitrator subsequently determined that the quota policy being imposed by

---

[9] *See* Sarah Wallace, *I-Team: More NYPD Officers Say There's Proof of Quota-Driven Arrests*, NBC NEW YORK (updated Apr. 1, 2016), attached hereto as **Exhibit F.**

[10] *A Glossary of Terms Relating to Corruption*, N.Y. TIMES (Oct. 21, 1971), http://query.nytimes.com/mem/archive/pdf?res=F70914FE3B5C1A7493C3AB178BD95F45878 5F9.

the Commanding Officer of the 75th Precinct in Brooklyn since 2002, Michael Marino ("Marino"), did in fact break state labor laws. *Id.*

71.    While testifying during the *Floyd* class action lawsuit challenging the NYPD's stop-and-frisk practices in March 2013, Marino acknowledged that when he took over Brooklyn's 75th Precinct in 2022, he demanded that cops produce ten summonses, one arrest and two good stops a month.[11]

72.    The KCDAO was also aware of the foregoing conduct of the Individual Defendants. Indeed, as demonstrated by multiple rulings in this Court and others, the KCDAO had a de facto policy of ignoring the constitutional rights of accused under former District Attorney Hynes.

73.    The conduct of Hynes persisted as he served as District Attorney for over two decades, from 1990 to 2013. The National Registry of Exonerations (a project of the Newkirk Center for Science & Society at University of California Irvine, the University of Michigan Law School and Michigan State University College of Law), lists numerous exonerations during the "Hynes Era," twenty-five of which prosecutorial conduct was deemed a primary or contributing factor. Several high-profile cases have been overturned because it has been demonstrated that Hynes' KCDAO was deliberately indifferent, a matter of de facto policy, to the constitutional rights of the accused. *See Collins v. City of New York*, 923 F. Supp. 2d 462 (E.D.N.Y. 2013), *see also Kellner v. City of New York*, No. 17-CV-1268, 2021 U.S. Dist. LEXIS 177698 (E.D.N.Y. 2021).

74.    This created an atmosphere which effectively encouraged constitutional deprivations by the NYPD (in the form of illegal searches, arrests, excessive force, false affidavits and malicious prosecutions), which the KCDAO assistants then ratified with the prosecutions.

---

[11] Bruch Golding, *NYPD deputy: Controversial Policies work*, N.Y. POST (Mar. 23, 2013), attached hereto as **Exhibit G.**

75.     The combination of the NYPD over-aggressive policing, coupled with the KCDAO moving forward with the malicious prosecutions, created an environment where wrongful convictions were a more than highly infrequent occurrence.

76.     As a result of the actions of the NYPD and Hynes' KCDAO, on September 7, 2022, the current Kings County District Attorney Gonzalez reversed these convictions in a ground breaking mass exonerations. These exonerees now seek to form a class.

## CLASS ACTION ALLEGATIONS

77.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rule of Civil Procedure, individually and on behalf of a class consisting of:

> All persons whose judgment of conviction was vacated by writ of error coram nobis issued between September 2022 and December 2022, by either the Supreme Court, Kings County or the Criminal Court of the City of New York, Kings County as a result of the examination by the KCDAO's Conviction Review Unit disclosed in the September 7, 2022 KCDAO press release (Exhibit A) (the "Class").

78.     The foregoing Class consists of 376 persons: the named Plaintiff and 375 other persons. One additional person (*see Barnes v. City of New York*, No. 23-cv-1070 (E.D.N.Y)) who would otherwise fall into the class has already filed and resolved an individual lawsuit on this ground, and he is therefore excluded from the proposed Class. The other additional person, Roy Wrenn, stipulated to the dismissal of his claims against Defendants.

79.     The members of the Class are so numerous as to render joinder impracticable. Joinder is also impracticable because, upon information and belief, many Class members are not aware of the fact that their constitutional rights have been violated and that they have the right to seek judicial redress. Many Class members lack sufficient means to retain an attorney to prosecute a civil rights lawsuit. Moreover, as victims of unconstitutional policing and prosecution, many

Class members do not bring individual claims for fear of retaliation and reprisal by NYPD officers. Class certification is the only appropriate avenue for the protection of Class members' rights.

80.    The Class members share a number of common questions of law and fact, including but not limited to:

a.    Whether the Individual Defendant officers engaged in a pattern and practice of unconstitutional stops and drug prosecutions without lawful probable cause;

b.    Whether the City Defendant, through the leadership structure of the NYPD and the KCDAO, failed to adequately train, screen, supervise, monitor, and discipline the Individual Defendant officers;

c.    Whether the City Defendant, through the leadership structure of the NYPD and the KCDAO, maintained a policy and practice of tolerating and encouraging unlawful prosecutions without lawful probable cause in order to inflate the officers' arrest statistics and corresponding career prospects;

d.    Whether the actions or inactions of the City Defendant, through the leadership structure of the NYPD and the KCDAO, encouraged perjury and evidence planting by the Individual Defendants and other police officers;

e.    Whether the actions or inactions of the City Defendant, through the leadership structure of the NYPD and the KCDAO, amount to deliberate indifference to the constitutional rights of the named Plaintiff and Class members;

f.    Whether the actions or inactions of the City Defendant, through the leadership structure of the NYPD and the KCDAO, caused the constitutional violations inflicted by the Individual Defendants.

81.     In short, all Class members, including the named Plaintiff, allege that they were victims of a pattern and practice set, tolerated, and enforced by the City Defendant, through the leadership structure of the NYPD and the KCDAO, to stop, seize, and maliciously prosecute vulnerable New Yorkers in marginalized communities in order to cover up police misconduct and bolster arrest statistics.

82.     The named Plaintiff's claims are typical of those in the class. Like all other class members, the named Plaintiff was maliciously prosecuted by a cabal of disgraced officers whose actions were facilitated, caused, and enabled by the deliberate indifference and active encouragement of the Defendant City. Like all other class members, the named Plaintiff was compelled to live under the weight of a tainted criminal conviction, along with all the collateral consequences attendant such a judgment, for over 15 years before the Individual Defendants' misconduct came to light and afforded Plaintiff some measure of relief from the tainted criminal judgment.

83.     The legal theories under which the named Plaintiff will seek monetary relief are the same as those on which all members of the Class will rely. Moreover, the harms suffered by the named Plaintiff are typical of the harms suffered by all Class members.

84.     The named Plaintiff has a strong personal interest in the outcome of this action, has no conflicts of interest with other members of the class, and will fairly and adequately protect the interests of the class.

85.     The named Plaintiff is represented by Hach Rose Schirripa & Cheverie, LLP, a leading and experienced class action plaintiffs' law firm. Counsel for the Plaintiff has the resources, expertise, and experience to prosecute this action. Counsel for the Plaintiff is aware of no conflicts among members of the Class or between the attorneys and members of the class.

86.    The Class should be certified pursuant to Federal Rule of Civil Procedure 23(a) and (b)(1)(B), (2), and (3) because all of the requisite requirements are satisfied, and because a class action is the clearly superior method of adjudicating the common claims against Defendants in the forum where the harm was inflicted – the Eastern District of New York.

**CAUSES OF ACTION**

**COUNT 1: 42 U.S.C. § 1983 – against Individual Defendants**
**Violation of the Fourth and Fourteenth Amendments by Malicious Prosecution**

87.    Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.

88.    Each of the Individual Defendants, while acting as NYPD officers and under color of law, maliciously instituted one or more criminal prosecutions against Plaintiff and other Class members without lawful probable cause to believe that an actual crime had been committed by such plaintiff.[12]

89.    Upon information and belief, the Individual Defendants played an active role in the prosecution of Plaintiff and the Class. In fact, KCDAO acknowledged that at least one of the Individual Defendants was an "essential witnesses" in Plaintiff's and the Class members' cases, meaning that these cases "could not have been prosecuted without them" and that the Individual Defendants' testimony was "essential to proving guilt."[13] Indeed, "only cases where [the

---

[12] Apart from the named Plaintiff, whose prosecutions were instituted by defendant Bowens, it is unknown at this time which defendant officer instigated the prosecution of which class plaintiff. Nevertheless, upon information and belief, each of the class plaintiffs was maliciously prosecuted by at least one of the defendant officers, and each of the defendant officers maliciously instituted the prosecution of at least one class plaintiff. With proper permission, Plaintiff will amend his complaint to reflect the specific plaintiff-officer match upon review of discovery.

[13] Exhibit A.

21

Individual Defendants] acted as primary witnesses, and there was no other independent evidence to support a conviction, were flagged for dismissal."[14]

90.     Among other things, the Individual Defendants are believed to be responsible for illegally detaining individuals, conducting unlawful cavity searches, planting evidence, filing false police reports based on fabricated evidence, misrepresenting evidence and/or failing to provide prosecutors with material evidence or information, and giving testimony to the grand jury that was knowingly false and/or contained material omissions.

91.     Upon information and belief, the prosecutors were aware of and/or had reason to be aware of the Individual Defendants' transgressions, but purposefully and willfully ignored any such transgressions in order to get more convictions.

92.     Each of the subject prosecutions was terminated in favor of the accused plaintiff.

93.     Plaintiff, as well as each member of the Class, was held in custody for some period on account of the prosecutions instituted by the Individual Defendants.

94.     By virtue of the foregoing conduct, the Individual Defendants engaged in the malicious prosecution of Plaintiff and the other Class members in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

95.     The Individual Defendants are accordingly liable for compensatory damages, punitive damages, and attorney's fees to Plaintiff and other Class members under 42 U.S.C. §§ 1983 and 1988.

### COUNT 2: 42 U.S.C. § 1983 - against City Defendant
### Municipal *Monell* Liability for Individual Defendants' Constitutional Violations

96.     Plaintiff repeats and realleges every allegation above as if fully set forth herein.

---

[14] *Id.*

97.     At all relevant times herein, Defendant City, acting through the NYPD and the KCDAO, developed, implemented, enforced, encouraged, and sanctioned de facto policies, practices, and/or customs exhibiting deliberate indifference to Plaintiff's and the other Class members' constitutional rights which caused the violation of such rights.

98.     The aforementioned unconstitutional customs, policies, usages, practices, procedures, and rules of the Defendant City include, but are not limited to, the following:

a.     Pursuing and stopping individuals regardless of probable cause in order to inflate the officer's arrest statistics;

b.     Pursuing and stopping innocent persons notwithstanding the existence of credible evidence which exonerates the accused of any criminal wrongdoing;

c.     Fabricating evidence in order to cover up police misconduct, including excessive force;

d.     Using excessive force, including negligent and reckless behavior while in pursuit;

e.     Destruction of evidence in order to conceal police misconduct;

f.     Falsely reporting and documenting searches and the results of searches;

g.     Falsely testifying in court;

h.     Failing to properly train police officers and assistance district attorneys; and

i.     Planting evidence.

99.     The Individual Defendants, collectively and individually, while acting under color of law and in the employ and agent of the Defendant City, engaged in unconstitutional conduct (as fully described above) pursuant to a custom, usage, practice, procedure or rule of the Defendant City.

100.    The foregoing customs, policies, usages, practices, procedures and rules of the Defendant City and its agencies and agents constitutes deliberate indifference to the safety, well-being and constitutional rights of Plaintiff and the Class.

101.    Specifically, the NYPD's practice and use of stop-and-frisk, as well as its practice and use of quotas, formal and informal measures that require police officers to issue a particular number of citations or make a certain number of arrests, constitutes deliberate indifference to the safety, well-being and constitutional rights of Plaintiff and the Class because enormous pressure was placed on NYPD officers to stop and frisk individuals to meet their quotas. Under the weight of this pressure, NYPD officers regularly fabricated drug charges against innocent individuals, a practice which a former NYPD narcotics detective testified to as "common."

102.    Upon information and belief, the NYPD officers, including the Individual Defendants identified herein, used illegal stop-and-frisked measures and fabricated drug charges against Plaintiff and the other members of the Class in order to inflate their arrest statistics and meet arrest quotas. Plaintiff's and the other Class members' false arrests, in turn, subjected them to criminal prosecution instituted without lawful probable cause and for malicious reasons.

103.    As set forth above, the foregoing customs, policies, usages, practices, procedures and rules of the Defendant City created an atmosphere which effectively encouraged constitutional deprivations by the NYPD, which the KCDAO assistants then ratified with prosecutions.

104.    The foregoing customs, policies, usages, practices, procedures and rules of the Defendant City were the direct and proximate cause of the constitutional violations suffered by Plaintiff and the Class as alleged herein.

105.    The foregoing practices were so persistent and widespread that they constituted a custom of which constructive knowledge and acquiescence could be implied on the part of the policymaking officials.

106.    Indeed, the supervisory and policymaking agents and officers of the Defendant City, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by subordinate police officers and assistant district attorneys, including the Individual Defendants, and were thus directly responsible for the violation of Plaintiff's and the Class's constitutional rights.

107.    In fact, both the NYPD and the KCDAO were aware of the foregoing conduct of the Individual Defendants, as well as the assistants in the District Attorney's Office, or in the exercise of reasonable care should have known, and did absolutely nothing to stop the conduct, reprimand the officers, or safeguard the rights of their arrestees, notwithstanding the fact that at least 378 arrests were achieved due to a flagrant disregard of constitutional rights. Indeed, as demonstrated by multiple rulings in this Court and others, the KCDAO had a de facto policy of ignoring the constitutional rights of accused under former District Attorney Hynes.

108.    Furthermore, Defendant City had a duty to properly train, supervise, and discipline its employees and agents.

109.    Defendant City breached that duty, in part, by: (a) improperly training, authorizing, encouraging or directing its employees and agents on lawful arrests and prosecutions; (b) failing to investigate allegations of unlawful arrests (i.e. fabricated drug charges) and malicious prosecutions; (c) failing to report allegations of unlawful arrests and malicious prosecutions; and (d) failing to discipline its employees and agents for making unlawful arrests and instituting criminal prosecutions without probable cause and for malicious reasons.

110.    The failure by Defendant City to properly train or supervise its subordinates amounted to deliberate indifference to Plaintiff's and the Class members' constitutional rights.

111.    The foregoing acts complained of deprived Plaintiff and other Class members of their rights under the Fourth and Fourteenth Amendments to the United States Constitution.

## CONCLUSION

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants as follows:

A.    Determining that this action is a proper class action, and designating Plaintiff as a class representative of the Class;

B.    Awarding compensatory and punitive damages in favor of Plaintiff and the other Class members against Defendants for all damages sustained as a result of Defendants' wrongdoing, in an amount to be determined at trial, including pre- and post-judgment interest thereon;

C.    Awarding Plaintiff and the other Class members reasonable attorneys' fees and costs under 42 U.S.C. § 1988; and

D.    Such other and further relief as the Court may deem just and proper, together with, interest, costs and disbursements.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all of the triable issues of fact and damages stated herein.

Dated:  July 11, 2025                    Respectfully submitted,
        New York, New York

                                        /s/ Frank R. Schirripa
                                        Frank R. Schirripa, Esq.
                                        HACH ROSE SCHIRRIPA & CHEVERIE LLP
                                        112 Madison Avenue, 10th Floor
                                        New York, New York 10016
                                        Telephone: (212) 213-8311

Facsimile: (212) 779-0028
fschirripa@hrsclaw.com

*Attorneys for Plaintiff and the Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

I, Frank R. Schirripa, Esq., Counsel for Plaintiff Ramel Gibson, hereby certify that on July 11, 2025, I (i) filed a true and correct copy of the foregoing with the Clerk of the Court for the United States District Court for the Eastern District of New York via the Court's ECF/CM system, which automatically notifies all counsel of record in the above-captioned matter and (ii) sent via certified mail a true and correct copy of the foregoing to *pro se* Defendants Admir Kacamakovic and Jerry Bowens at the following addresses:

Mr. Admir Kacamakovic
67 93rd Street, Apt. 6A
Brooklyn, New York 11209

Mr. Jerry Bowens
09A5598
Green Haven Correctional Facility
Box 4000
Stormville, NY 12582

*/s/ Frank R. Schirripa*
Frank R. Schirripa

1