UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
RAMEL GIBSON, individually and on
behalf of all those similarly situated,

                    Plaintiff,

          -against-

CITY OF NEW YORK, MICHAEL
ARENELLA, MICHAEL BERGMAN,
JERRY BOWENS, RICHARD DANESE,
MICHAEL FODER, RICHARD HALL,
SEAN JOHNSTONE, ADMIR
KACAMAKOVIC, EDDIE MARTINS,
OSCAR SANDINO, and HENRY
TAVAREZ,

                    Defendants.
--------------------------------------------------------X

**MEMORANDUM
AND ORDER**
23-CV-8968 (AMD) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

In 2022, the Kings County District Attorney's Office (the "District Attorney," the "KCDAO," or the "KCDA") sought to vacate and dismiss 378 convictions in which the District Attorney had lost confidence due to the participation by officers who were later found to have committed serious misconduct related to their official job duties.[1] This case followed. The second amended complaint states that Plaintiff Ramel Gibson ("Plaintiff" or "Gibson"), on his own behalf and on behalf of the other exonerees:

> brings this class action to hold the individual officers identified above responsible for the illegal, malicious, and unconstitutional prosecutions endured by each class member. Moreover, given the City [of New York]'s well-documented deliberate indifference to and systematic

---

[1] *See* Press Release, The Brooklyn District Attorney's Office, Brooklyn DA Eric Gonzalez to Dismiss 378 Convictions That Relied on 13 Officers Who Were Later Convicted of Misconduct While on Duty (Sept. 7, 2022), http://www.brooklynda.org/2022/09/07/brooklyn-da-eric-gonzalez-to-dismiss-378-convictions-that-relied-on-13-officers-who-were-later-convicted-of-misconduct-while-on-duty/ [https://perma.cc/Q83E-JV6X] [hereinafter, "Press Release"].

> encouragement of the unconstitutional patterns and practices that resulted in 378 New Yorkers being deprived of their Fourth Amendment rights, Plaintiff seeks to hold the City responsible for the malicious prosecutions created and tolerated by its employees in the NYPD and the KCDAO.

Second Am. Compl. ("SAC"), ECF 82, ¶ 14.

Notwithstanding Plaintiff's laudable goals, how to manage putative class discovery in a case of this type is a complex inquiry. On the one hand, the Court must evaluate the weight to be afforded to an exonerated person's interest in their records remaining sealed as mandated by New York State law; on the other, as set forth above, the case seeks to hold New York City, and its officers who are alleged to have committed misconduct, accountable for their actions. At this juncture, however, Plaintiff's counsel only represents one of the exonerees in this case.

Whether Gibson will continue to be the sole plaintiff in this case remains to be seen; the SAC states that this action is brought "individually and on behalf of others similarly situated," alleging, *inter alia*, claims of malicious prosecution against the City of New York and 11 former New York City police officers. *See generally* SAC, ECF 82. Plaintiff has now filed a motion to compel and unseal discovery, which is presently before the Court, seeking the unsealing and production of New York Police Department ("NYPD") arrest records and the KCDA prosecution and investigation files for all putative class members. *See* Mot. to Compel & Unseal Disc. ("Mot."), ECF 96, at 8. Defendant City of New York ("Defendant" or the "City") and intervening party KCDA oppose Plaintiff's motion. *See* City Mem. in Opp'n ("City Opp'n"), ECF 97; KCDA Mem. in Opp'n ("KCDA Opp'n"), ECF 98. For the reasons set forth below, Plaintiff's motion to unseal and compel discovery is granted, but only in part, and as modified by the Court.

## RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I.  Factual Background

Plaintiff Gibson and former plaintiff Roy Wrenn[2] initiated this action on December 6, 2023. *See generally* Compl., ECF 1. On September 2, 2025, Plaintiff Gibson filed a corrected second amended class action complaint alleging, *inter alia*, one claim of malicious prosecution against the City of New York and 11 former New York City police officers — Michael Arenella, Michael Bergmann, Jerry Bowens, Richard Danese, Michael Foder, Richard Hall, Sean Johnstone, Admir Kacamakovic, Eddie Martins, Oscar Sandino, and Henry Tavarez — and "one count of municipal liability against the City based on the NYPD's alleged practice of stop-and-frisk and arrest quota policy, the KCDAO's alleged ratification of those practices through prosecutions, and the City's alleged failure to train or supervise employees." Mem. Decision & Order, ECF 106, at 6; *see generally* SAC, ECF 82. More specifically, Plaintiff seeks to bring this action on behalf of himself and 376 of his fellow exonerees, all of whom had their convictions vacated in 2022 pursuant to writs of *error coram nobis* following an investigation led by the KCDA that "uncovered a group of 13 NYPD officers who had committed serious misconduct

---

[2] On June 5, 2025, former plaintiff Wrenn filed a notice of voluntary dismissal, dismissing his claims as to all Defendants. *See* Notice of Voluntary Dismissal, ECF 69. Soon thereafter, on July 3, 2025, Wrenn and Gibson filed a motion for leave to file an amended complaint. *See* Pls.' Mot. to Amend Compl., ECF 74. On July 11, 2025, the Honorable Ann M. Donnelly granted the motion, adding that "because Roy Wrenn is no longer a party to this suit and the amended complaint contains no allegations relating to him, the Court dismisses the action with respect to Mr. Wrenn." July 11, 2025 ECF Order; *see generally* Pls.' Mot. to Amend Compl., ECF 74; *see also generally* City Mot. to Stay, ECF 70. Accordingly, following Wrenn's dismissal from the action, there are up to 377 vacated convictions at issue in this matter, including Plaintiff Gibson's, and therefore only 376 putative plaintiffs. *See* City Opp'n, ECF 97, at 1, 2 n.1. In the context of the current motion to compel and unseal discovery, Plaintiff argues that "the City's weaponization of former plaintiff Wrenn's testimony regarding his arrest and the nature of Plaintiff's *Monell* claims necessitate that Plaintiff review the NYPD's and KCDA's records and conduct for *all* of the exonerated cases." Reply, ECF 99, at 9 (emphasis added).

3

relating directly to their job duties." SAC, ECF 82, ¶¶ 9–14. Currently, the putative class of plaintiffs has not been certified. *See generally* Docket.

As alleged in the SAC, Plaintiff also asserts *Monell* claims against Defendant City. Plaintiff alleges, *inter alia*, that the NYPD maintained a practice of stopping individuals without cause and fabricating charges in order to meet arrest quotas; Plaintiff also contends that Defendant City exhibited deliberate indifference to the constitutional violations stemming from this practice by failing to properly train or supervise its employees. *See* SAC, ECF 82, ¶¶ 96–111; *see also* Mem. & Order, ECF 106, at 9.

## II.  Procedural History & the Parties' Positions

On July 17, 2025, the Court held a conference to discuss case status and discovery. *See* July 17, 2025 ECF Min. Entry & Order. At the conference, Plaintiff raised his intention to seek discovery related to all putative class members without first obtaining the relevant releases from those individuals, and the Court set a briefing schedule for Plaintiff's anticipated motion to compel the production of documents that may be protected under New York Criminal Procedure Law Section 160.50 ("§ 160.50").[3] *Id.* Following various extensions of the briefing schedule, on November 3, 2025, the fully briefed motion to compel and unseal discovery was filed. Mot., ECF 96; City Opp'n, ECF 97; KCDA Opp'n, ECF 98; Reply, ECF 99.

---

[3] In accordance with the briefing schedule, Plaintiff served his opening brief on Defendant City on August 27, 2025. Mot. for Extension, ECF 90, at ECF p. 1. On October 2, 2025, the Court notified the KCDA that should it seek to intervene in connection with the motion to compel and unseal discovery, it should file an appropriate motion. Oct. 2, 2025 ECF Order. On October 3, 2025, the KCDA moved to intervene. KCDA Mot., ECF 91. On November 6, 2025, the Court directed any objections to the KCDA's motion to be filed by December 6, 2025, or the Court would deem any objection waived. Nov. 6, 2025 ECF Order. No party filed an objection, and the Court thereafter granted the motion to intervene. May 12, 2026 ECF Order; *see generally* Docket.

As detailed in Plaintiff's motion, on August 27, 2025, Plaintiff served the City with requests for production, which included a request for "the production of the NYPD records and the KCDA's prosecution and investigation files for each of the non-party class members," along with the instant motion seeking a court order "unsealing the requested records protected under [§] 160.50 and compelling the City to produce the documents it refuses to produce without a 160.50 release." Mot., ECF 96, at 4–5; *see* Schirripa Decl., Ex. A, ECF 96-2; Schirripa Decl., Ex. B, ECF 92-3, at 7 (requesting "[t]he complete NYPD file for each of the Non-Party Class Members that were part of the Mass Exoneration" and "[t]he complete KCDA's prosecution file for each of the Non-Party Class Members' cases that were part of the Mass Exoneration"). Plaintiff's motion to compel represents that Plaintiff seeks these records because they are "pertinent to his claims under 42 U.S.C. § 1983 for the benefit of the putative class members that [§] 160.50 seeks to protect." Mot., ECF 96, at 8. Additionally, Plaintiff contends that he is "willing to enter into a protective order . . . to make the information sealed under [§] 160.50 confidential, attorneys' eyes only." *Id.*

In response, Defendant City contends that release of the requested NYPD and KCDA records is barred by § 160.50 absent a release from each of the 376 putative class members.[4] City Opp'n, ECF 97, at 4. Additionally, Defendant City claims that many of the putative class members may not want these records unsealed and many of these individuals have not chosen to bring their own civil actions related to their vacated convictions. *Id.* at 6–7, 7 n.4. Defendant City also asserts that Plaintiff's counsel is "in

---

[4] As Defendant City notes in its opposition to Plaintiff's motion, "378 individuals' convictions were vacated" by the KCDA. City Opp'n, ECF 97, at 2 n.1. However, "obtaining a § 160.50 release[] . . . is not an issue for Plaintiff Ramel Gibson and former plaintiff Roy Wrenn," as Defendant City is "already in receipt of those releases." *Id.*

5

possession of significant information regarding" the arrests and criminal cases of the 376 putative class members, as demonstrated through lists Plaintiff produced during discovery containing the names and other information concerning the individuals whose convictions were vacated by the KCDA. *Id.* at 2, 7. Therefore, Defendant City argues that Plaintiff "could clearly attempt to locate and contact these individuals to request and/or obtain their consent." *Id.* at 7. Defendant City also argues that Plaintiff's suggestion to release the requested records with an attorneys' eyes only designation does not take into account that (1) efforts to gather the files will invade the privacy rights of these 376 individuals and (2) the records will necessarily need to be disseminated to non-attorneys during the pendency of the litigation, including experts, consultants, witnesses, and other relevant individuals. *Id.* at 7–8. Moreover, Defendant City highlights the "incredible administrative burden on NYPD, KCDA, and the City if they are required to produce the requested documents."[5] *Id.* at 8.

Similarly, intervenor KCDA opposes Plaintiff's motion. KCDA Opp'n, ECF 98. Like Defendant City, the KCDA contends that Plaintiff's motion to compel should be denied because the files are protected by § 160.50 and Plaintiff seeks their production without appropriate safeguards and without supplying the relevant waivers. *Id.* at ECF pp. 3–4. Moreover, the KCDA posits that the discovery Plaintiff seeks is overbroad, irrelevant to Plaintiff's claims, and would create an undue burden for the KCDA. *Id.* at ECF pp. 5–6. Finally, the KCDA asserts that Plaintiff's demand for the 376 files "would

---

[5] Defendant City highlights that "the underlying NYPD and KCDAO files for the other 376 individual cases" span "a nearly 20-year period, beginning in 1999 through 2017." City Opp'n, ECF 97, at 8 (citing Press Release). Defendant City notes that locating these records, some of which "date back 20 years and [will] not be in electronic format," and producing them to the Corporation Counsel's Office will take longer than Plaintiff's requested 60-day deadline to produce the records, in the event Plaintiff's motion is granted. *Id.* at 8.

cripple the KCDA's limited resources and obstruct the ordinary operations of the office," as well as require a significant amount of time to produce. *Id.* at ECF pp. 6–7. In that vein, the KCDA represents that "most if not all" of the "files are located in an off-site warehouse, and it would take a significant amount of time for the KCDA's Civil Litigation unit to request and then receive the case files," and that there are numerous other discovery and FOIL requests that the KCDA must attend to at the same time. KCDA Opp'n, ECF 98, at ECF pp. 7–8.

On June 9, 2026, the Court held a hearing on Plaintiff's motion to compel. June 9, 2026 ECF Min. Entry & Order; *see* June 9, 2026 Hr'g Tr. ("Tr."), ECF 109. At the hearing, the parties and the KCDA discussed their positions on the motion to compel, including (1) Plaintiff's position on the relevance of the requested discovery, (2) the availability and burden of producing the records, and (3) privacy concerns associated with unsealing the records. June 9, 2026 ECF Min. Entry & Order. Plaintiff stated that he is seeking the files in order to, *inter alia*, understand the bases for the arrests of the putative plaintiffs, time sentenced and/or time served, and any plea deals. Tr., ECF 109, at 9:10–12, 11:2–7; *see id.* at 62:6–8 (representing that "the issue" Plaintiff's counsel is "trying to get to is . . . the charge, the conviction, and time served"). Plaintiff did not contest, however, that these files would not reveal a "smoking gun," such as evidence of illegal police action or an unconstitutional policy or practice. *Id.* at 37:12–40:12. Notwithstanding that concession, however, Plaintiff contended that the requested files were nevertheless being sought to advance Plaintiff's *Monell* claim, and Plaintiff emphasized that the *Monell* claim survived a motion to dismiss. *See id.* at 50:1–9. Plaintiff also represented that Defendant City and the KCDA are "attempting to use the state law to prevent [Plaintiff] from learning information about [the exonerees] in their benefit." *Id.* at 50:20–22.

Defendant City represented that because some of the requested records related to the 376 putative plaintiffs are "over two decades old[ and] not everything is necessarily computerized," the collection of the files will be difficult and time-consuming. *Id.* at 17:1–16. Additionally, Defendant City added that, even if these files could be collected, they would then require review and redactions prior to production, which ultimately would take "months and months" for all of the 376 requested files. *Id.* at 17:17–23, 18:3–7. Defendant City also noted that "it would be best to start with a sampling" rather than the entirety of the 376 files "to see if that sampling is going to glean the information that [P]laintiff is looking for." *Id.* at 19:14–22.

The KCDA likewise raised concerns with a mass unsealing of the 376 files requested by Plaintiff. More specifically, the KCDA raised privacy concerns, stressing that the sealed files at issue concern "mostly drug cases" and involve "serious felonies and serious crimes" that the exonerees may not want unsealed. *Id.* at 26:25–27:9. The KCDA also stressed that the exonerees were not "found actually innocent," further adding to the KCDA's concerns with unsealing these files absent releases from the exonerees.[6] *Id.* at 27:10–11. In addition, the KCDA described the burden of retrieving the requested files, each of which could have "hundreds" or "thousands" of pages. *Id.* at 29:9–13.

---

[6] Relatedly, the KCDA argued that, to assuage privacy concerns, Plaintiff's counsel could provide a letter to the 376 exonerees' former attorneys, who could then forward the note to their former clients, in order to attempt to obtain the exonerees' consent to unseal the files and involve themselves in the case. Tr., ECF 109, at 28:14–19; *see id.* at 30:22–24. Plaintiff's counsel noted that when the case was initiated the firm "did a mailing" to putative class members; Plaintiff's counsel noted that the firm "ha[s] not had any opposition" or any putative class member request not to be contacted. *Id.* at 57:14–19. However, Plaintiff's counsel also noted that numerous mailings were returned as undeliverable. *Id.* at 58:2–6. The Court notes that there is no evidence in the record suggesting that this mailing yielded additional § 160.50 waivers or plaintiffs. *See id.* at 57:20–21 (noting that Plaintiff's counsel "did not ask for [§ ]160.50[ waivers] from every person").

At the hearing, the KCDA explained that, in connection with its exoneration work, the Conviction Review Unit uses an internal case management system, which "has screening sheets and some very basic information" concerning each case, including "if someone pled guilty or was convicted, what they were convicted of or pled guilty to[,] and what the sentence was." *Id.* at 31:16–22. The KCDA represented that the case management system "was mainly how" the KCDA accessed the information it used to make the determination to exonerate the 378 convictions at issue in this case. *Id.* at 32:1–10. The KCDA represented that, with the office's limited Civil Litigation Unit staff, "even just pulling up this basic information would take months for all 378 cases."[7] *Id.* at 33:17–22.

In response, Plaintiff asserted that the "screenshots or screen sheets" that the KCDA referred to "and the basic info that [the KCDA] considered during the mass exoneration" seemed to be "a digital document," "easily searchable," and a place to "start." *Id.* at 39:23–40:9. The KCDA added that pulling the case management sheets for all of the exonerees "would still take a few months" but would be much less burdensome than "actually going through all the case [files]." *Id.* at 40:18–23. The KCDA also noted that "while some of [the] files have been digitized, most of all the files have not." *Id.* at 40:24–41:1. The KCDA further indicated that a "screening sheet" from the case management system generally includes "the witness information," "what [the

---

[7] The KCDA added that "to actually turn over everything we normally turn over" in a wrongful conviction case would take much longer, with each box of files taking "[a]bout a month" to produce. Tr., ECF 109, at 33:23–34:7. Here, the KCDA estimated there could be 130 boxes of files, which would take the KCDA "about a decade to actually turn over everything." *Id.* at 34:14–18. Accordingly, the KCDA emphasized that "it would be unduly burdensome and would . . . threaten the normal business operations of the office," which is comprised of just two attorneys and seven paralegals, to comply with Plaintiff's original request in full. *Id.* at 34:19–22; *see id.* at 33:17–22.

exonerees] were convicted of and what they were sentenced," "and the accusatory instrument," "as long as the case isn't too old." *Id.* at 41:19–42:1, 48:11–12; *see id.* at 44:21–49:1 (providing additional information regarding the information contained in the KCDA's case management system screening sheets). The KCDA represented that a sample of 10 cases could likely be produced within 30 days. *Id.* at 42:2–6.

## DISCUSSION

### I. Legal Standard

#### A. Section 160.50 in the Context of Section 1983 Claims

New York Criminal Procedure Law Section 160.50 states, in relevant part, that:

> Upon the termination of a criminal action or proceeding against a person in favor of such person, . . . the record of such action or proceeding shall be sealed and the clerk of the court wherein such criminal action or proceeding was terminated shall immediately notify the commissioner of the division of criminal justice services and the heads of all appropriate police departments and other law enforcement agencies that the action has been terminated in favor of the accused, and unless the court has directed otherwise, that the record of such action or proceeding shall be sealed.

N.Y. C.P.L. § 160.50(1). "'[T]he [New York State] Legislature's objective in enacting [§] 160.50 . . . was to ensure that the protections provided be consistent with the presumption of innocence, which simply means that no individual should suffer adverse consequences merely on the basis of an accusation, unless the charges were ultimately sustained in a court of law[.]'" *People v. Anonymous* ("*Anonymous*"), 123 N.Y.S.3d 41, 44 (2020) (quoting *People v. Patterson*, 579 N.Y.S.2d 617, 619 (1991) (internal quotation marks omitted)). Put differently, "'[t]he sealing requirement was designed to lessen the adverse consequences of unsuccessful criminal prosecutions by limiting access to official records and papers in criminal proceedings which terminate in favor of the accused[.]'" *Id.* (quoting *Katherine B. v. Cataldo*, 800 N.Y.S.2d 363, 366 (2005) (internal quotation marks omitted)).

10

This case, however, which was brought under 42 U.S.C. § 1983, is governed by federal law. Fed. R. Evid. 501; *see Daniels v. City of New York*, No. 99-CV-1695 (SAS), 2001 WL 228091, at *1 (S.D.N.Y. Mar. 8, 2001) ("The case at bar is brought under 42 U.S.C. § 1983 and, as such, is governed by Federal Rule of Evidence 501 which states that privileges are governed by federal common law."); *Howard v. City of Rochester*, 758 F. Supp. 3d 109, 122 (W.D.N.Y. 2024) (collecting cases); *see also MacNamara v. City of New York*, No. 04-CV-9612 (KMK) (JCF), 2006 WL 3298911, at *2 (S.D.N.Y. Nov. 13, 2006) ("As an initial matter, it should be emphasized that New York State law does not govern discoverability and confidentiality in federal civil rights actions." (quotation marks omitted)) (collecting cases). In general, "[f]ederal law disfavors privileges barring disclosure of relevant evidence." *King v. Conde*, 121 F.R.D. 180, 187 (E.D.N.Y. 1988) (collecting cases). Consequently, "automatic application of a state law privilege in a federal question case is inappropriate" and "state privilege rules should not be permitted to 'frustrate the important federal interests in broad discovery and truth-seeking and the interest in vindicating important federal substantive policy such as that embodied in section 1983.'" *MacNamara*, 2006 WL 3298911, at *2–3 (quoting *King*, 121 F.R.D. at 187). Therefore, in a federal question case such as this one, "invocations of privilege or statutory bars on the production of information are governed by federal law, although the federal courts are required to take account of the policies embodied in state law that recognize privileges or other rules of confidentiality." *Haus v. City of New York* ("*Haus I*"), No. 03-CV-4915 (RWS) (MHD), 2006 WL 1148680, at *2 (S.D.N.Y. Apr. 24, 2006) (citing Fed. R. Evid. 501; *United States v. Goldberger & Dubin*, 935 F.2d 501, 505 (2d Cir. 1991); *Von Bulow v. Von Bulow*, 811 F.2d 136, 141–42 (2d Cir. 1987)).

Accordingly, as § 160.50 is a state statutory privilege, while a federal court must take into account § 160.50's protections, this privilege "must be construed narrowly,

11

'and must yield when outweighed by a federal interest in presenting relevant information to a trier of fact.'" *Daniels*, 2001 WL 228091, at *1 (quoting *United States v. One Parcel of Property at 31–33 York St.* ("*One Parcel*"), 930 F.2d 139, 141 (2d Cir. 1991)). Nevertheless, "the policies underlying state evidentiary privileges must still be given serious consideration, even if they are not determinative." *Burka v. New York City Transit Auth.*, 110 F.R.D. 660, 664 (S.D.N.Y. 1986). "[A]s a matter of comity, federal courts must balance the deference to be accorded state-created privileges," such as § 160.50, "with the need for the information sought to be protected by the privilege." *Daniels*, 2001 WL 228091, at *1; *see One Parcel*, 930 F.2d at 141; *MacNamara*, 2006 WL 3298911, at *3; *see also Haus v. City of New York* ("*Haus II*"), No. 03-CV-4915 (RWS) (MHD), 2006 WL 3375395, at *2 (S.D.N.Y. Nov. 17, 2006) ("[F]ederal courts should, in the spirit of comity, take into consideration the policy interests embodied in state privileges . . . limiting disclosure of confidential materials, at least to the extent that they can be reconciled with federal policy interests and the discovery needs of federal civil rights litigants.").

Weighing these considerations, federal courts "in this Circuit have had occasion to address access to sealed state records during discovery in actions under § 1983." *Owens v. County of Monroe*, No. 6:21-CV-6445 FPG CDH, 2025 WL 1902225, at *3 (W.D.N.Y. July 10, 2025) (collecting cases). Ultimately, despite the protections afforded by § 160.50, it is within a federal court's power to order the unsealing of such documents, and courts have done so even without added protections to safeguard the privacy of individuals impacted. *Haus I*, 2006 WL 1148680, at *3 (observing that "federal courts, when addressing demands for production of . . . arrest documents, have commonly rejected confidentiality arguments premised on [§ 160.50] even without redaction") (collecting cases); *see Haus II*, 2006 WL 3375395, at *2. In § 1983 actions, "'district courts do possess the authority to unseal state criminal records in the

12

possession of a state district attorney, when the records are relevant to the federal lawsuit and 'the district attorney moves to quash a subpoena, or objects to a discovery demand.'" *Owens*, 2025 WL 1902225, at *3 (quoting *K.A. v. City of New York*, No. 16-CV-4936 (LTS) (KNF), 2022 WL 1063125, at *2 (S.D.N.Y. Apr. 8, 2022) (internal quotation marks omitted)); *see Howard*, 758 F. Supp. 3d at 123.

## B.  Discovery Limits Under Rule 26

Pursuant to Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Courts consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit" when evaluating the relevance and proportionality of discovery. Fed. R. Civ. P. 26(b)(1). Accordingly, even when a party seeks discovery that is relevant, courts must limit discovery when the burden of producing the information outweighs its benefits. *See Bryant v. City of New York*, No. 99-CV-11237 (LMM) (DFE), 2000 WL 1877082, at *2 (S.D.N.Y. Dec. 27, 2000); *In re OpenAI, Inc., Copyright Infringement Litig.*, Nos. 25-MD-3143 (SHS) (OTW), 23-CV-8292, 23-CV-10211, 2025 WL 2846692, at *1 (S.D.N.Y. Oct. 8, 2025) ("'Rule 26 gives a district court broad discretion to impose limitations or conditions on discovery[,] which extends to granting or denying motions to compel.'" (quoting *Edmar Fin. Co., LLC v. Currenex, Inc.*, 347 F.R.D. 641, 646 (S.D.N.Y. 2024))). It is well established that "'[i]t is within a Magistrate Judge's discretion to decide whether discovery requests are relevant and proportional.'" *In re OpenAI, Inc., Copyright Infringement Litig.*, 2025 WL 2846692, at *1 (quoting *Radio Music License Comm., Inc. v. Broad. Music, Inc.*, 347 F.R.D. 269, 273 (S.D.N.Y. 2024)).

The party moving to compel the production of discovery "bears the initial burden of demonstrating relevance and proportionality." *New York Times Co. v. Microsoft Corp.*, 757 F. Supp. 3d 594, 597 (S.D.N.Y. 2024) (quotation marks omitted). Moreover, Rule 26(c) provides, in relevant part, that "[a] party or any person from whom discovery is sought may move for a protective order . . . [and] [t]he court may, for good cause, issue an order to protect a party or person from . . . undue burden or expense." Fed. R. Civ. P. 26(c). The party or person resisting production of relevant evidence bears the burden of establishing that an undue burden exists. *Fletcher v. Atex, Inc.*, 156 F.R.D. 45, 54 (S.D.N.Y. 1994) (collecting cases).

## II.  Analysis

Plaintiff seeks the unsealing and production of both NYPD and the KCDA records related to 376 putative plaintiffs in order to substantiate their *Monell* claims and to seek certification of the putative class. The Court first evaluates the relevance of the requested discovery materials before turning to the proportionality of the requested discovery to the needs of the case.

### A.  Relevance

At the outset, the Court notes that, under federal discovery principles, "[t]he standards for relevance in discovery are fairly broad." *Haus*, 2006 WL 1148680, at *2 (citing Fed. R. Civ. P. 26(b)). Generally, information is considered "relevant if: '(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.'" *Vividor v. Evans*, No. 25-CV-6598 (NJC) (JMW), 2026 WL 1113438, at *1 (E.D.N.Y. Apr. 24, 2026) (quoting *Vaigasi v. Solow Mgmt. Corp.*, No. 11-CV-5088 (RMB) (HBP), 2016 WL 616386, at *11 (S.D.N.Y. Feb. 16, 2016) (internal quotation marks omitted)). However, "the party seeking the discovery must make a *prima facie* showing that the discovery sought is

14

more than merely a fishing expedition." *Id.* (quotation marks and alteration omitted) (collecting cases).

Here, the KCDA contends that the records Plaintiff seeks are "irrelevant" to Plaintiff's claims. KCDA Opp'n, ECF 98, at ECF p. 4. At oral argument on the motion, the Court inquired of Plaintiff's counsel what information contained in the KCDA files would be relevant and necessary to advance the case; Plaintiff's counsel represented that the basic information about what the individuals were charged with, a summary of the case, and case disposition — essentially, the case information that the KCDA evaluated in determining whether to seek vacatur of the convictions — would be relevant to class discovery. Tr., ECF 109, at 9:10–12, 11:2–7; *see id.* at 62:5–8 (representing that "the issue" Plaintiff's counsel is "trying to get to is . . . the charge, the conviction, and time served"). At the same time, Plaintiff's counsel conceded that the KCDA files and police files would be very unlikely to have "smoking gun" evidence of police misconduct, such as proof that evidence was planted or fabricated. *Id.* at 37:12–40:12; *see id.* at 50:1–9.

It is indisputably true that the case files for all of the exonerees would be relevant if they were in the case as plaintiffs themselves. In the current posture, however, the discovery efforts are being undertaken to ascertain the viability of bringing a class action. Reply, ECF 99, at 7–8. Accordingly, the Court considers Plaintiff's discovery request in context, considering the four prerequisites to class certification, *i.e.*, numerosity, whether there are questions of law or fact common to the class, whether "claims or defenses of the representative parties are typical of the claims or defenses of the [putative] class," and whether the plaintiff will fairly and adequately protect the class's interests. Fed. R. Civ. P. 23(a). The Court has also considered whether Plaintiff has advanced evidence or argument to suggest that there is a likelihood that the

15

requested discovery will help to establish predominance and superiority. *See* Fed. R. Civ. P. 23(b)(3). Given the procedural posture here, the Court does not see this inquiry as a simple "relevance" analysis; rather, the fact that Plaintiff's counsel does not yet represent the exonerees is significant. After all, the key thread binding the putative class members together at this stage is the fact that their exonerations were announced the same day. *See* Press Release. Does this mean there are questions of law and fact in common in the class? Possibly. Are Plaintiff Gibson's claims typical of the claims of other putative class members? We don't know. Will questions of law or fact common to class members, whose arrests span many years and involve many different officers and scenarios, predominate over questions affecting only individual members? Again, we don't know.

Plaintiff posits that the information he seeks "is pertinent to his claims under 42 U.S.C. § 1983" and class certification issues. Mot., ECF 96, at 8; *see* Reply, ECF 99, at 7 ("[T]he NYPD arrest records and the KCDA prosecution files that Plaintiff requests 'would provide information that is potentially central to both the class certification issues and the merits of plaintiffs' principal [*Monell*] claims.'" (quoting *Haus I,* 2006 WL 1148680, at *5)). Plaintiff's argument boils down, however, to little more than *ipse dixit*. Plaintiff does not provide any granular explanation of how the documents and information in the City's or the KCDA's files will provide evidence of an unconstitutional policy or practice or help to answer the Rule 23 questions outlined above. Accordingly, although Plaintiff's *Monell* claims have survived a motion to dismiss, there is very little information before the Court to indicate that the sought-after records will support Plaintiff's allegations that the NYPD engaged in a practice of stopping individuals without cause and fabricating evidence to meet quotas and that the City exhibited deliberate indifference to the subsequent constitutional violations by

16

failing to train or supervise employees. *See* Mem. Decision & Order, ECF 106, at 12; SAC, ECF 82, ¶¶ 96–111.

In connection with this topic, Defendant City argues that the files Plaintiff seeks "alone cannot support Plaintiff's *Monell* theory"; rather, Defendant City asserts, "[w]ithout speaking to these [376] individuals themselves and determining what evidence was purportedly fabricated by NYPD and KCDA," Plaintiff's *Monell* theory "cannot be substantiated." City Opp'n, ECF 97, at 11. Without prejudging the merits of any individual putative plaintiff's case or the viability of any class motion that may be filed, the Court notes at the outset that because the underlying exonerations involved cases that flowed from individual arrests over decades by almost a dozen police officers, the case here is notably different from cases where a group of police officers have taken a coordinated action in response to an external event, such as mass arrests related to a protest. *Cf. Haus I*, 2006 WL 1148680, at *2 (finding that the approximately 300 non-party arrest records sought were relevant to the plaintiffs' *Monell* claims regarding an alleged police department policy to arrest demonstrators without probable cause as well as the appropriateness of plaintiffs' class certification). At the same time, it is conceivable that the requested files may provide pertinent information regarding, as Plaintiff contends, the NYPD's policy and practice of utilizing illegal stop-and-frisk measures and fabricated drug charges to meet quotas, which would be relevant to substantiating Plaintiff's *Monell* theory. *See* SAC, ECF 82, ¶ 101.

While keeping in mind the teaching that state statutory privileges "must yield when outweighed by a federal interest in presenting relevant information to a trier of fact," the Court must also consider the privacy interests of the 376 putative plaintiffs. *One Parcel*, 930 F.2d at 141; *see Daniels*, 2001 WL 228091, at *1; *MacNamara*, 2006 WL 3298911, at *3. Defendant City and the KCDA point to *Daniels v. City of New York* to

17

argue that outreach to 376 individuals should be required to obtain waivers prior to the records being unsealed to maintain the spirit of § 160.50. *See generally* 2001 WL 228091; *see* City Opp'n, ECF 97, at 5–6 (noting that the court in *Daniels* kept the requested records sealed pursuant to § 160.50 unless individuals "waive[d] their statutory [. . .] right to privacy" because "without their consent, there is no way to know whether these individuals have any interest in being involved in this litigation"); KCDA Opp'n, ECF 98, at ECF pp. 3–4 (using *Daniels* to emphasize that Plaintiff "has had a list of the names" of these non-parties "and has had three years to investigate their claims and obtain [§ 160.50] waivers and failed to do so").

In *Daniels*, in support of a *Monell* claim alleging that the NYPD engaged in illegal stops, the plaintiffs sought identifying information of arrestees, both adults and juveniles, in an attempt to solicit witnesses and class members. 2001 WL 22809, at *1. The *Daniels* court weighed the privacy interests of these arrestees against the plaintiffs' "great" need for the information, noting that testimony from these individuals "would help prove that the stops were made pursuant to a municipal policy, practice or custom." *Id.* at *2. The *Daniels* court ultimately found that the "plaintiffs should be given access to the requested information, but in the case of those who were arrested or juveniles, only if these individuals waive their statutory right to privacy." *Id.*

Defendant City and the KCDA's reliance on *Daniels* to entirely preclude class discovery as to exonerees who have not yet signed a § 160.50 release is unpersuasive. For one, in *Daniels*, the court found that testimony from the sought-after individuals was highly relevant in supporting the plaintiffs' *Monell* theory; likewise, as noted above, here, the discovery Plaintiff seeks could help prove that the ultimately vacated convictions stemmed from "a municipal policy, practice or custom." *Id.* Additionally, Defendant City and the KCDA use *Daniels* to make much of the fact that Plaintiff has

18

had ample time, and the requisite information, to reach out to the 376 individuals to obtain the requisite § 160.50 waivers. *See* City Opp'n, ECF 97, at 5–6; KCDA Opp'n, ECF 98, at ECF pp. 3–4. However, unlike in *Daniels*, where the plaintiffs sought identifying information of arrestees in part to solicit witnesses and class members, here, Plaintiff has not indicated that these records are being requested for that purpose. *See generally* Mot., ECF 96; Reply, ECF 99. Rather, Plaintiff represents that these records are being sought to support Plaintiff's *Monell* theory and class certification (albeit with little explanation of *how*). *See, e.g.*, Reply, ECF 99, at 7–8. Thus, like in *Haus I*, Plaintiff "do[es] not seek to identify potential witnesses or talk to these arrestees," and "the information that [Plaintiff is] looking for is unlikely to be available through these individuals, since it concerns the contents of documents created by employees of the Police Department" and the KCDA. *Haus I*, 2006 WL 1148680, at *5 (rejecting the utility of the so-called *Daniels* procedure, which requires individualized outreach via the court to non-parties impacted by a party's information request to obtain consent).

In addition to *Daniels*, Defendant City points to *Bryant v. City of New York*, where the court denied the plaintiffs' request to compel the City to produce the names of 107 individuals arrested in the vicinity of a demonstration. *See generally* 2000 WL 1877082; *see* City Opp'n, ECF 97, at 6. The *Bryant* court weighed the privacy interests of these 107 individuals and noted that "an order compelling the City to give this information to [the] plaintiffs' lawyers would be insensitive to the interests of the 107 persons (and to the risk of solicitation by [the] plaintiffs' lawyers)." 2000 WL 1877082, at *2. Additionally, the court noted that to the extent "testimony from additional arrestees would tend to prove that the arrests were made pursuant to a municipal policy, practice or custom," then "the most pertinent evidence would concern what happened prior to [the demonstration], and particularly what training was given" rather than the

testimony of these arrestees. *Id.* at *3. Like *Daniels*, *Bryant* is unpersuasive as authority to entirely preclude putative class discovery. As established above, unlike in *Bryant* where the court found that the sought-after information was irrelevant to the plaintiffs' *Monell* claim, here, the NYPD and the KCDA files related to the 376 individuals may have some relevance to Plaintiff's *Monell* theory that the City engaged in a policy or practice of making illegal stops and seizures and planting drugs, in order to meet arrest quotas. Moreover, as discussed above, unlike in *Bryant*, Plaintiff does not seek the requested information for the principal purpose of outreach to these 376 individuals; therefore, there is less concern that the exonerated individuals "might be upset" by being "contacted by the plaintiff['s] lawyers." *Id.* at *2. Finally, to the extent that Defendant City and the KCDA use *Daniels* and *Bryant* to argue that Plaintiff must obtain waivers from all 376 individuals prior to the unsealing of the records, federal courts may unseal records without § 160.50 waivers where the relevance of the sealed materials outweighs the privacy interests of the non-party individuals, as discussed *supra*. *Cf. Daniels*, 2001 WL 228091, at *1 (allowing the plaintiffs to contact adult civilians who were stopped but not arrested without a waiver of their statutory privacy rights); *see also Haus I*, 2006 WL 1148680, at *4 (noting that "to the extent that defendants argue that plaintiffs should be required to seek out non-party arrestees and obtain releases from them," such a procedure "not only would be slow and awkward, but is virtually guaranteed not to yield the complete universe of data that would be most useful on the class issues in this case").

Additionally, as other courts have noted, and as Plaintiff points out, "the burden on the legitimate privacy interests of the non-party" putative plaintiffs "can be minimized by an 'attorneys'-eyes-only' designation." *MacNamara*, 2006 WL 3298911, at *4; *see* Mot., ECF 96, at 8; Reply, ECF 99, at 5; *see also* Tr., ECF 109, at 59:12–23. While the

20

Court acknowledges, as Defendant City notes, that "even under a limiting attorneys-eyes-only designation, documents have to be disseminated to more than just attorneys during the preparation of litigation and trial, including experts, consultants, witnesses, City agents . . . , and the Court," City Opp'n, ECF 97, at 7–8, the general spirit of § 160.50 would still be protected as these files will not put these individuals' vacated convictions into the public sphere and subject these individuals to "adverse consequences merely on the basis of an accusation," *Anonymous*, 123 N.Y.S.3d at 44.

Therefore, in light of the foregoing, the Court has determined that "the privilege created by [. . .] § 160.50 must yield to the federal interest in presenting relevant information to a trier of fact." *MacNamara*, 2006 WL 3298911, at *4 (quotation marks omitted). The Court finds that limited discovery into the NYPD and the KCDA files is appropriate in order to ascertain whether the information contained in the files is, indeed, relevant to Plaintiff's claims and to class discovery. *See Ding v. Mask Pot Inc.*, 347 F.R.D. 417, 438 (E.D.N.Y. 2024) (noting that "[p]re-class certification discovery is often necessary in order to provide the court with sufficient information to determine whether certification is appropriate in light of the requirements set out in Rule 23"). Additionally, the Court finds that, with an attorneys'-eyes-only designation, a limited production of the requested files will not undermine the policy considerations embodied in § 160.50. *See Haus I*, 2006 WL 1148680, at *5.

### B. Proportionality

Having determined that a limited review of the records of the 376 non-party files may yield information that is relevant to the instant action, the Court turns to the proportionality of Plaintiff's request. As the *Bryant* court noted, even when a plaintiff shows "that the discovery they seek is relevant," a court "must still limit the discovery" if it determines that "the burden or expense of the proposed discovery outweighs its

21

likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." 2000 WL 1877082, at *2 (quotation marks omitted); *see* Fed. R. Civ. P. 26(b)(2)(C). In this respect, the court's power "'may be employed where the burden is not measured in the time or expense . . . , but lies instead in the adverse consequences of the disclosure of sensitive, albeit unprivileged, material.'" *Id.* (quoting *Johnson v. Nyack Hosp.*, 169 F.R.D. 550, 562 (S.D.N.Y. 1996)).

As to proportionality, Plaintiff argues that "the City's weaponization of former plaintiff Wrenn's testimony regarding his arrest and the nature of Plaintiff's *Monell* claims necessitate that Plaintiff review the NYPD's and KCDA's records and conduct for *all* of the exonerated cases." Reply, ECF 99, at 9 (emphasis added). Specifically, Plaintiff seeks "[t]he complete NYPD file for each of the Non-Party Class Members that were part of the Mass Exoneration" as well as "[t]he complete KCDA[] prosecution file for each of the Non-Party Class Members' cases that were part of the Mass Exoneration." Schirripa Decl., Ex. B, ECF 96-3, at 7. At the hearing, however, Plaintiff's counsel conceded that a sampling of the KCDA's "screen sheets" "and the basic info that [the KCDA] considered during the mass exoneration" could be a "start." *Id.* at 39:23–40:9.

Unlike the defendants in *Haus I*, who "offer[ed] no evidence to support or explain" the assertion that producing the requested documents would be burdensome, here, Defendant City and the KCDA have each provided details demonstrating the vast administrative burden that retrieving, reviewing, and producing the entirety of the 376 files would place on each organization. 2006 WL 1148680, at *5. For one, Defendant City represents that locating, reviewing, and producing the 376 files, which span "a nearly

22

20-year period, beginning in 1999 through 2017" and may "not be in electronic format," would impose a "significant and extremely time-consuming administrative burden on the KCDA, NYPD and the Corporation Counsel's Office." City Opp'n, ECF 97, at 7, 8; *see* Tr., ECF 109, at 16:15–17:23 (describing the "time consuming process" producing the records would involve). Moreover, Defendant City contends that, at any rate, the production of these files cannot be accomplished within 60 days, as Plaintiff suggests. City Opp'n, ECF 97, at 8–9 (explaining that the "KCDAO and NYPD will not have the resources to locate and produce to the Corporation Counsel's Office, even a limited number of their records for each individual, in 60 days, much less for the Corporation Counsel's Office to review, prepare and produce those documents also in those 60 days"); *see* Tr., ECF 109, at 18:3–11 (emphasizing that producing the entire case files for all putative plaintiffs could not be accomplished in 60 days). Defendant City also notes that the NYPD unit that handles document requests for civil cases "is very limited in size, with less than a dozen employees, some of whom are part-time and others who must perform other police duties," further compounding the burden of Plaintiff's request. City Opp'n, ECF 97, at 9. Likewise, the KCDA contends that Plaintiff's "demand would cripple the KCDA's limited resources and obstruct the ordinary operations of the office." KCDA Opp'n, ECF 98, at ECF p. 6; *see* Tr., ECF 109, at 33:17–34:22 (emphasizing that the task "would cripple the normal business operations" of the KCDA). The KCDA notes that the majority of the files "have long since been sent to off-site storage" and that it will take "months, if not years" for the office to review the files, assert any privileges, and draft the relevant privilege log; this burden is further compounded by the fact that the unit responsible for this review is comprised of only

two attorneys and nine paralegals[8] (who also work for another unit). KCDA Opp'n, ECF 98, at ECF p. 6; *see* Tr., ECF 109, at 33:17–34:18 (estimating that it would take "about a decade to actually turn over everything"). In sum, the KCDA contends that compliance with Plaintiff's request "would be so unduly burdensome that it would threaten the normal operations" of the office and "would take years to complete." KCDA Opp'n, ECF 98, at ECF pp. 6–7.

In response, Plaintiff contends that "these files have recently been collected and reviewed and should be easy to re-produce"; however, Plaintiff provides no factual support for this assertion, which contradicts the representations of both Defendant City and the KCDA.[9] Reply, ECF 99, at 9. Additionally, as the KCDA explained at the

---

[8] The KCDA further adds that these paralegals "are unionized employees whose working hours are governed by City contract" and, accordingly, the KCDA "cannot force them to work nights and weekends to produce these materials without providing them with contractually required compensation, thereby incurring tremendous financial burden." KCDA Opp'n, ECF 98, at ECF p. 6.

[9] To the extent that Plaintiff is referring to his assertion that "[t]he KCDA has already collected and reviewed the requested documents during their investigation leading to the Mass Exoneration" and "they simply need to produce them to Plaintiff," the Court notes that there is a discrepancy between Plaintiff's requested discovery and the statement Plaintiff cites from the KCDA press release. Reply, ECF 99, at 2–3; *compare* Schirripa Decl., Ex. B, ECF 96-3, at 7 (requesting "[t]he complete KCDAO's prosecution file for each of the Non-Party Class Members' cases that were part of the Mass Exoneration") *with* Press Release ("The Conviction Review Unit reviewed all Brooklyn convictions in which these 13 ex-officers were involved. Cases where they acted as primary witnesses, and there was no other independent evidence to support a conviction, were flagged for dismissal."). The Press Release does not explicitly state that the KCDA reviewed the entirety of the prosecution files for each of the 378 exonerees; rather, the KCDA simply stated that they reviewed the convictions where the 13 named officers were involved as primary witnesses and no other independent evidence was used to support the conviction. *See* Press Release. Accordingly, the Court notes that there is a disconnect between Plaintiff's request for production and the information contained in the Press Release, rendering Plaintiff's statement that "these [prosecution] files have recently been collected and reviewed and should be easy to re-produce" unconvincing, particularly in light of the KCDA's representation as to the burden of the requested production. Reply, ECF 99, at 9; *see* KCDA Opp'n, ECF 98, at ECF pp. 6–7. As explained at the June 9, 2026 hearing, the KCDA did not review the full case files of each exoneree in order to determine that their conviction should be vacated. Tr., ECF 109, at 32:1–10.

hearing, the case management system, and the "basic facts" it provides, "was mainly how" the KCDA gathered information to make the determination to exonerate the 378 convictions at issue in this case. Tr., ECF 109, at 32:1–10. Absent any additional information from Plaintiff to support his claim that the files may be readily produced, the Court credits Defendant City and the KCDA's representations as to the significant burden of Plaintiff's requested production.

In light of the very substantial administrative burden Plaintiff's discovery requests would impose on the City and the KCDA, the Court's many questions about whether the information contained in the files will actually advance Plaintiff's objectives in this case, and the privacy interests of the 376 non-party individuals whose files are at issue, the unsealing and production of the files from the NYPD's and the KCDA's records related to all 376 non-party individuals is not proportional to the needs of the case given its current posture.[10] *Id.*; *cf.* Jan. 24, 2025 ECF Order Denying Pl.'s Mot. to Consolidate (denying Plaintiff's attempt to consolidate this case with another case stemming from the 378 vacated convictions and involving *Monell* claims against the City). At the same time, Plaintiff has made a showing of relevance sufficient to justify a review of a sample of the City's and the KCDA's files regarding the putative class members and, if warranted, move for class certification. Accordingly, after carefully

---

[10] Given that the common thread linking the putative class members together is an announcement of 378 discretionary decisions by a district attorney's office, the Court does not have sufficient information to ascertain whether Plaintiff will be able to establish the Rule 23(a) prerequisites to class certification and that class treatment would a superior method of adjudication in this case. Importantly, the decisions made in the underlying cases by the KCDA do not, by themselves, evince an unconstitutional policy or practice under *Monell* and, given the size of the putative class and differing circumstances presented in each exoneree's case, full-blown class discovery is not proportional to the needs of this case prior to a determination on class certification.

25

weighing the many competing considerations here, the Court grants Plaintiff's request for the unsealing and production of the NYPD and the KCDA files, but only in limited part.

The Court first notes that Plaintiff's request, as initially proposed in the motion to compel briefing, lacks specificity.[11] Prior to oral argument, Plaintiff provided no narrowing or specificity regarding the "file[s]" he seeks. Schirripa Decl., Ex. B, ECF 96-3, at 7 (requesting "[t]he complete . . . file" as to the putative plaintiffs from both the NYPD and the KCDA); *see Haus I*, 2006 WL 114680, at *1 (granting the plaintiffs' request for "the production of several categories of documents," including all summonses and online booking system forms, "for all arrests — including, but not limited to, the named plaintiffs"); *Haus II*, 2006 WL 3375395, at *1 (granting the plaintiffs' request for the production of "data worksheets prepared by" the district attorney's office "for all people arrested in connection with" a specific demonstration); *see also MacNamara*, 2006 WL 3298911, at *5–13 (granting in part and denying in part the plaintiffs' motion to compel production of specific categories of documents held by the City regarding relevant non-party arrestees). The Court declines to grant Plaintiff's staggering request as proposed in the briefing papers.

Rather than compelling the NYPD and the KCDA to produce all 376 files in full, the Court finds that a sample of 25 files, including the City's files and the KCDA's

---

[11] By way of a contrasting example, in *MacNamara*, the court denied the New York County District Attorney's Office's ("DANY") motion to quash a subpoena seeking the production of files for 1,200 non-party arrestees, finding that "compliance with the subpoena would not constitute an undue burden" because "the subpoena requests a *narrow set of specific relevant documents, generated over a seven-day period,* and for which DANY appears to be the only available source." 2006 WL 3298911, at *16 (emphasis added). Here, however, Plaintiff has sought each exoneree's entire file from the City and the KCDA.

"screening sheets" for those individuals, randomly selected from the list of 376 putative plaintiffs, is appropriate here. Tr., ECF 109, at 39:23–40:9 (Plaintiff's counsel noting that a sampling of the KCDA's screening sheets could be a "start"); *id.* at 41:19–42:6, 48:2–12 (counsel for the KCDA proposing a "sample" of the "screening sheets" from the case management system, which would generally include "the witness information," "what they were convicted of and what they were sentenced," "and the accusatory instrument," "would be relatively easy" "as long as the case isn't too old"); *see id.* at 44:21–49:1 (providing additional detail regarding the information contained in the KCDA's case management system screening sheets); *cf. Lora v. Bd. of Ed. of City of New York*, 74 F.R.D. 565, 587 (E.D.N.Y. 1977) (granting the plaintiff's motion to compel the production of 50 randomly selected files in a redacted form to protect the identity of the non-party individuals, to support the plaintiff's claim); *Ding v. Mask Pot Inc.*, 347 F.R.D. 417, 438 (E.D.N.Y. 2024). *But see Dziennik v. Sealift, Inc.*, No. 05-CV-4659 (DLI) (MDG), 2006 WL 1455464, at *1 (E.D.N.Y. May 23, 2006) ("Courts have ordinarily refused to allow discovery of class members' identities at the pre-certification stage out of concern that plaintiffs' attorneys may be seeking such information to identify potential new clients, rather than to establish the appropriateness of certification.") (collecting cases); *Bryant*, 2000 WL 1877082, at *2.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to compel and unseal discovery is granted, but only in limited part. Defendant City and the KCDA are ordered to produce a random sample of 25 files from the list of 376 putative plaintiffs from the City's files and the KCDA's digital case management system database, subject to a protective order designating these files as for attorneys' eyes only. The parties are directed to file a joint

protective order by July 24, 2026, and Defendant City and the KCDA are directed to

provide the requisite files to Plaintiff by October 16, 2026.[12]

      **SO ORDERED.**

Dated:  Brooklyn, New York
        July 17, 2026

*Taryn A. Merkl*
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE

---

[12] The Court respectfully reminds Plaintiff's counsel that nothing in this decision prevents counsel from attempting to secure § 160.50 waivers from additional putative class members.